UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
NORTHERN DIVISION

| | |
|---|---|
| ANITA G. ZUCKER, TRUSTEE OF THE ANITA G. ZUCKER TRUST DATED ~~MARCH~~ APRIL 4~~20~~, 2007, AS SUBSEQUENTLY AMENDED OR RESTATED<br>4838 Jenkins Avenue<br>Charleston, SC 29405-4816<br><br>and<br><br>ANITA G. ZUCKER AS TRUSTEE OF THE ARTICLE 6 MARITAL TRUST, UNDER THE FIRST AMENDED AND RESTATED JERRY ZUCKER REVOCABLE TRUST DATED APRIL 2, 2007<br>4838 Jenkins Avenue<br>Charleston, SC 29405-4816<br><br>　　　Individually and on behalf of all others<br>　　　similarly situated,<br><br>　　　　　Plaintiffs,<br><br>　v.<br><br>BOWL AMERICA, INC.<br>c/o The Corporation Trust Company, Statutory Agent<br>2405 York Road, Suite 201<br>Lutherville-Timonium, Maryland 21093-2264<br><br>and<br><br>BOWLERO CORP.<br>c/o The Corporation Trust Company, Inc., Statutory Agent<br>Wilmington, DE 19801<br><br>and<br><br>DUFF & PHELPS SECURITIES LLC,<br>c/o Corporate Creations Network Inc., Statutory Agent | Case No. _____<br><br>Judge: _____<br><br>**AMENDED CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

1

3411 Silverside Road
Tatnall Building, Suite 104
Wilmington, DE 19801

and

CHERYL A. DRAGOO
10201 Heron Pond Terrace
Burke, VA 22015

and

ALLAN L. SHER
20 Ocean Park Blvd, Apt 12
Santa Monica, CA 90405

And

MERLE FABIAN
4620 N Park Ave., Apt 1202W
Chevy Chase, MD 20815

and

GLORIA M. BRAGG
c/o The Corporation Trust Company,
Statutory Agent
2405 York Road, Suite 201
Lutherville-Timonium, Maryland 21093-2264

and

NANCY E. HULL
3299 K St., NW, Suite 100
Washington, DC 20007

and

RUTH MACKLIN
212 Washington Ave., #1407
Towson, MD 21204,

Defendants.

2

Plaintiffs Anita G Zucker, Trustee of the Anita G. Zucker Trust Dated ~~March 20~~April 4, 2007~~.~~, as Subsequently Amended or Restated and Anita G. Zucker Trustee, of the Article 6 Marital Trust, Under the First Amended and Restated Jerry Zucker Revocable Trust dated April 2, 2007 (collectively, "*Plaintiffs*") hereby file this class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and all others similarly situated against Defendant Bowl America, Inc. ("*Bowl America*" or the "*Company*"), Defendant Bowlero Corp. ("*Bowlero*"), Defendant Duff & Phelps Securities LLC ("*D&P*"), and Defendants Cheryl Dragoo, Allan Sher, Merle Fabian, Gloria Bragg, Nancy Hull, and Ruth Macklin (collectively, the "*Board of Directors*" or "*Director Defendants*") (Bowl America, Bowlero, D&P, and the Board of Directors shall be referred to collectively as the "*Defendants*"), and allege as follows based upon personal knowledge as to themselves and their own acts and, as to all other matters, upon information and belief based upon, *inter alia*, investigation conducted by their attorneys which included a review of the Company's public filings, press releases and other publicly available materials.

## NATURE OF THE ACTION

1.    This shareholder class action challenges an unfair, misleading, and grossly inadequate merger between Bowl America and Bowlero that was orchestrated by a reckless and self-interested Board of Directors who were intent on forcing the sale of a proven, debt-free, and valuable company at a fire sale price. Instead of leading Bowl America into the future following a temporary shutdown that was caused by the COVID-19 pandemic, the Board of Directors elected to quit; betraying their shareholders, and seeking to liquidate their personal holdings at the earliest opportunity through a forced sale of the Company at a discount to its market price and far below its intrinsic value, while simultaneously issuing a materially false and misleading Proxy Statement on Schedule 14A dated July 13, 2021 (the "*Merger Proxy*") -- and breaching their fiduciary duties

3

in the process. Certain of the Director Defendants have complete control over the Company and control a majority of the votes on the merger largely by virtue of their holdings of Class B stock which entitles them to ten (10) votes per share, while Plaintiffs and similarly situated class members hold shares of Class A stock entitling them to just one (1) vote per share. The merger is the result of a self-dealing transaction entered into by certain controlling stockholders, Defendants Macklin, Hull and Fabian. The merger price of $44 million dollars is grossly unfair to stockholders as just the unencumbered real estate owned by Bowl America has a value in excess of $50 million dollars. Both D&P, the Company's financial advisor, and Bowlero, the acquirer, provided substantial assistance to and aided and abetted the Director Defendants' breaches of fiduciary duties in connection with the merger.

2.      The special meeting of shareholders is currently scheduled for August 11, 2021 for the purpose of approving this merger. As a result of Defendants misconduct, Plaintiffs and other similarly situated shareholders will suffer significant harm.

## PARTIES

### A.      Plaintiffs.

3.      Plaintiff Anita G Zucker, Trustee of the Anita G. Zucker Trust Dated ~~March 20~~April 4, 2007, as Subsequently Amended or Restated is the beneficial owner of 15,000 shares of Bowl America's Class A stock. This Trustee owns 0.431474% of all of Bowl America's outstanding Class A stock.

4.      Plaintiff Anita G. Zucker Trustee of the Article 6 Marital Trust, Under the First Amended and Restated Jerry Zucker Revocable Trust dated April 2, 2007, is the beneficial owner of 264,596 shares of Bowl America's Class A stock. This Trustee owns 7.062572% of all of Bowl America's outstanding Class A stock.

5.      Plaintiffs collectively own 279,596 shares of Bowl America's Class A stock which represents a total of 7.46295% of Bowl America's 3,746,454 outstanding shares of Class A stock.

**B.      Defendant Bowl America.**

6.      Defendant Bowl America is a publicly traded Maryland corporation with its principal place of business at 6446 Edsall Road, Alexandria, Virginia 22312. In the merger, Potomac Merger Sub, Inc., a Maryland corporation, will merge with and into Bowl America, with Bowl America as the surviving entity and a wholly-owned subsidiary of Bowlero.

7.      Bowl America's Class A stock is listed and traded on the NSYE American Exchange under the ticker symbol "BWL-A."

8.      Each of the issued and outstanding 3,746,454 shares of Bowl America's Class A stock is entitled to one (1) vote per share for an aggregate of 3,746,454 votes and each of the issued and outstanding 1,414,517 shares of Bowl America's Class B stock is entitled to ten (10) votes per share for an aggregate of 14,145,170 votes.

9.      The total number of votes represented by outstanding Class A stock and Class B stock as of the merger date was 17,891,624.

**C.      Defendant Bowlero.**

10.      Defendant Bowlero is a publicly traded Delaware corporation with its principal place of business at 222 W. 44th Street, New York, New York 10036. Bowlero, a privately held company, owns and operates over 300 bowling centers in North America and owns the Professional Bowlers Association. As described further below, Bowlero, separately and in concert with D&P, aided and abetted the Board of Directors in breaching their fiduciary duties.

11.     Bowlero recently announced that it has agreed to become a publicly traded company through a merger with a special purpose acquisition company, Isos Acquisition Corp. (the "SPAC Transaction"), The SPAC Transaction contemplates that the Bowlero's merger with Bowl America will go forward and those assets will be included in the deal. The combined company has been valued at around $2.6 billion dollars.

**D.     Defendant D&P.**

12.     Defendant D&P is a Delaware corporation with its principal place of business at 55 E. 52nd Street, 14 Floor, New York, New York 10055. D&P provides financial advice, valuation services, fairness opinions and various other financial services to its clients, such as Bowl America. As described further below, D&P, separately and in concert with Bowlero, aided and abetted the Board of Directors in breaching their fiduciary duties.

**E.     The Board of Director Defendants.**

**a.     Ms. Cheryl Dragoo.**

13.     Defendant Cheryl A. Dragoo was appointed to Bowl America's Board of Directors on September 25, 2008.

14.     Ms. Dragoo is Bowl America's Chief Executive Officer, having been appointed to the position in January 2019, and Bowl America's President, having been appointed to the position on December 3, 2019. Ms. Dragoo has also served as the Company's Chief Financial Officer since 2002 and has been employed by the Company since 1972.

15.     On September 26, 2019, Ms. Dragoo and Bowl America entered into an Amended and Restated Employment agreement, which was offered as an incentive to convince Ms. Dragoo to postpone her retirement. Ms. Dragoo agreed to assist in the sale of the Company and, in exchange, was promised a lump sum payment of $400,000 if a sale occurred. As a result, Ms.

Dragoo has a significant financial incentive, untethered to any sales price, to ensure that the merger with Bowlero closes, even if it means selling out the shareholders in breach of her fiduciary duties.

16.     Ms. Dragoo is the beneficial owner of 14,010 shares of Bowl America's Class A stock and is entitled to cast 14,010 votes.

17.     Ms. Dragoo has already agreed to vote in favor of the merger.  Ms. Dragoo signed the Merger Proxy and Letter to Stockholders on behalf of the Board of Directors urging the shareholders to vote in favor of the merger.

**b.     Mr. Allan L. Sher.**

18.     Defendant Allan L. Sher was appointed to Bowl America's Board of Directors on February 15, 1997.

19.     Mr. Sher is the beneficial owner of 52,500 shares of Bowl America's Class A stock and is entitled to cast 52,500 votes.

20.     Mr. Sher has already agreed to vote in favor of the merger.

**c.     Ms. Merle Fabian.**

21.     Defendant Merle Fabian was appointed to Bowl America's Board of Directors on March 20, 1990.

22.     Ms. Fabian is the beneficial owner of 879,463 shares of Bowl America's Class A stock which entitles her to cast 879,463 votes and the beneficial owner of 872,026 of Bowl America's Class B stock which entitles her to cast 8,720,260 votes. In total, Ms. Fabian is entitled to cast 9,599,723 votes and, by herself, has majority voting control of the Company.

23.     Ms. Fabian has already agreed to vote in favor of the merger pursuant to a Voting and Support Agreement that was executed between Bowl America, Bowlero, and Ms. Fabian.

**d.     Ms. Gloria M. Bragg.**

24.    Defendant Gloria M. Bragg was appointed to Bowl America's Board of Directors on September 24, 2020. Ms. Bragg is not the beneficial owner of any shares of Bowl America.

   **e. Ms. Nancy E. Hull.**

25.    Defendant Nancy E. Hull was appointed to Bowl America's Board of Directors on June 17, 2014.

26.    Ms. Hull is the beneficial owner of 212,359 shares of Bowl America's Class A stock which entitles her to cast 212,359 votes and the beneficial owner of 217,417 of Bowl America's Class B stock which entitles her to cast 2,174,170 votes. In total, Ms. Hull is entitled to cast 2,386,529 votes.

27.    Ms. Hull has already agreed to vote in favor of the merger pursuant to a Voting and Support Agreement that was executed between Bowl America, Bowlero, and Ms. Hull.

   **f. Ms. Ruth Macklin**

28.    Defendant Ruth Macklin served on Bowl America's Board of Directors from February 14, 1978 through May 17, 2021.

29.    Upon information and belief, Ms. Macklin was intimately involved in all aspects of the merger between Bowl America and Bowlero until her resignation.

30.    Ms. Macklin is the beneficial owner of 184,585 shares of Bowl America's Class A stock which entitles her to cast 184,585 votes and the beneficial owner of 183,407 of Bowl America's Class B stock which entitles her to cast 1,834,070 votes. In total, Ms. Macklin is entitled to cast 2,018,655 votes.

31.    Ms. Macklin has already agreed to vote in favor of the merger.

   **g. Board of Directors - Summary**

8

32.     In total, Ms. Hull, Ms. Fabian, Mr. Sher, Ms. Dragoo, and Ms. Macklin are the beneficial owners of 1,342,917 shares of Class A stock which entitles them to cast 1,342,917 votes. In total, Ms. Hull, Ms. Fabian, and Ms. Macklin are the beneficial owners of 1,272,850 shares of Class B stock which entitles them to cast 12,728,500 votes.

33.     Ms. Hull, Ms. Fabian, Mr. Sher, Ms. Dragoo, and Ms. Macklin own or control 14,071,417 of a total of 17,891,624 votes, representing over 78% of the total number of votes.

34.     Based upon the forgoing, the Board of Directors can approve the Bowlero merger even if every single shareholder that is not a director, votes against it. This sale is oppressive, unjust, and unfair to Plaintiffs and every other shareholder who invested in Bowl America and relied upon a purportedly competent Board of Directors.

## JURISDICTION AND VENUE

35.     This Court has jurisdiction over the subject matter of this action pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and pursuant to 28 U.S.C. § 1331. This Court has supplemental jurisdiction over Plaintiffs' state-law claims pursuant to 28 U.S.C. § 1367.

36.     Venue is proper in this District pursuant to 28 U.S.C. §1391(b) in that many of the acts and practices complained of herein occurred in this District, and Defendants conduct business or reside in this District.

## BACKGROUND FACTS

**A.     History of Bowl America and its Board of Directors.**

37.     Bowl America was founded in Maryland in 1958 by Mr. Edward Goldberg, Mr. Sollie Katzman, Mr. Samuel Sobkov, and Mr. Samuel Higger. The Company began with one (1) bowling center. After the founders passed, their shares and control of the Company passed to their heirs, including Ms. Macklin, Ms. Hull, and Ms. Fabian.

38.    On February 14, 1978, Ms. Ruth Macklin, the daughter and heir of one of the founders, Mr. Katzman, was appointed to the Board of Directors. Ms. Macklin served on Bowl America's Board of Directors until May 17, 2021, when she retired because of her failing health. At the time she retired from Bowl America's Board of Directors, Ms. Macklin was over ninety-one (91) years old. She served on the Board of Directors for over forty-three (43) years.

39.    On March 20, 1990, Ms. Merle Fabian, also a daughter and heir of one of the founders, Mr. Goldberg, was appointed to the Board of Directors. Ms. Fabian has served on the Board of Directors for over thirty-one (31) years. When the Company announced the merger, Ms. Fabian was over eighty-two (82) years old.

40.    On February 15, 1997, Mr. Allan Sher was appointed to the Board of Directors. Mr. Sher has served on the Board of Directors for over twenty-four (24) years. When the Company announced the merger, Mr. Sher was over eighty-eight (88) years old.

41.    On September 25, 2008, Ms. Cheryl Dragoo was appointed to the Board of Directors. Ms. Dragoo has served on the Board of Directors for over twelve (12) years. When the Company announced the merger, Ms. Dragoo, who was planning her retirement, was over seventy-two (72) years old.

42.    On June 17, 2014, Ms. Nancy Hull, yet another heir of an original founder, was appointed to the Board of Directors. When the Company announced the merger, Ms. Hull was over fifty-five (55) years old.

43.    On September 24, 2020, Ms. Gloria Bragg was appointed to the Board of Directors. When the Company announced the merger, Ms. Bragg was over fifty-six (56) years old.

44.     Around the time the decision was made to explore a potential sale of the Company, the average age of the Board of Directors was seventy-four (74) years old and many of the directors had served well over twenty (20) years in office.

45.     In 1976, Bowl America appointed the late Leslie H. Goldberg as its President and CEO. Mr. Goldberg, the son and heir of founder Mr. Edward Goldberg. Under Mr. Goldberg's leadership, Bowl America expanded to twenty-five (25) bowling center locations by 1998.

46.     During Mr. Goldberg's forty-three (43) year term as President and CEO of Bowl America, he served as the face of the Company.

**B.      The Board of Directors Abandons Its Fiduciary Duties and Fails to Adopt a Succession Plan.**

47.     During the late Mr. Goldberg's tenure as President of Bowl America, the Board of Directors was complacent, did not play an active role in managing or directing the Company, and was ill-prepared to assume control in the event of Mr. Goldberg's death.

48.      In 2018, Mr. Goldberg's health began to decline, and he was no longer able to serve effectively as Bowl America's President. As Mr. Goldberg aged and his health declined, the Board of Directors recklessly ignored their fiduciary duties and made no effort to devise any type of succession plans that would prepare Bowl America for when Mr. Goldberg was no longer able to lead the Company. Tellingly, not a single annual proxy statement filed by Bowl America makes any reference to a succession plan and, significantly, any risk attendant to the Company's business going forward.

49.     Demonstrating years of complacency at the Board of Directors level, the Merger Proxy explains the need for capital expenditures to upgrade the Company's operations and a lack of management depth as reasons shareholders should vote in support of the merger. However, those conditions had been caused by years of the Board of Directors' recklessness, who failed to

recognize obvious risks to the Company's business and failed to actively manage and oversee the Company which they now claim must be sold because of the need for capital expenditures and lack of management depth.

50.     On September 26, 2019, with no succession plan in place, the Board of Directors agreed to an Amended and Restated Employment Agreement with Ms. Dragoo with terms that anticipated the proposed merger.   Just days later, on October 14, 2019, Mr. Goldberg passed away at the age of 89 . At the time he passed, Mr. Goldberg was still serving as President of Bowl America

51.     In exchange for postponing her retirement until the merger was approved, Ms. Dragoo's annual salary was increased to $200,000. In addition to receiving a raise, she agreed to cooperate in the merger, and, in exchange, the Board of Directors agreed to pay her a lump sum cash payment equal to $400,000 if the Company is sold, even if she is not terminated and regardless of the sales price. If this merger is approved, Ms. Dragoo will receive more than three (3) times the value of her shares through her employment contract.

52.     Ms. Dragoo was one of two people appointed to negotiate the terms of and oversee the merger. The significant financial incentives set forth in her employment agreement created a conflict of interest between Ms. Dragoo's personal interest in pushing through an unfair deal and her obligation to maximize the price the Company will receive in a sale.

**C.      The Board of Directors Began Soliciting Offers to Sell Bowl America Despite Bowl America's Stock Price and the Market for Bowling Alleys Being Depressed Because of the COVID-19 Pandemic.**

53.     From January 1, 2019 through December 31, 2019, the price of Bowl America's Class A stock ranged from a low of $13.97 per share to a high of $17.48 per share and the average closing price per share during this pre-pandemic time period was $15.25. Yahoo! Finance,

https://finance.yahoo.com/quote/BWL-A/history?period1=1546300800&period2=1577750400&interval=1d&filter=history&frequency=1d&includeAdjustedClose=true (last visited July 26, 2021). In calendar year 2019, the quarterly dividends for Class A and Class B shareholders were equal to $0.175 per share.

54.     On March 19, 2019, the Board of Directors engaged the law firm of Foley & Lardner LLP ("**Foley**") to explore strategic alternatives, including a potential sale of the Company. On the same day, the Board of Directors decided to engage an investment banker.

55.     Mr. Sher and Ms. Dragoo were responsible for leading the Company's efforts to solicit a buyer and served as the Company's primary points of contact with Foley and the investment bank. Mr. Sher and Ms. Dragoo reported to the Board of Directors.

56.     The Board of Directors inexplicably failed to create a special committee to review the merger, apparently satisfied that having Ms. Dragoo and Mr. Sher head the Company's efforts presented no conflicts of interest. Ms. Dragoo, by virtue of her $400,000 golden parachute payment that will be triggered if this merger is completed, has a clear conflict of interest between her personal interest in obtaining her parachute payment and her obligation to maximize the value of the sale for the benefit of the shareholders.

57.     On May 7, 2019, the Board of Directors engaged Duff & Phelps Securities LLC ("**D&P**") as its investment banker for purposes of soliciting a buyer. The Board of Directors elected to use D&P despite the fact that D&P had done significant work for Bowlero within two (2) years of the proposed deal. The Merger Proxy states that during the two years preceding the date of its Opinion, Duff & Phelps independently performed valuation work for Bowlero unrelated to the proposed transaction with the Company for which it received a fee of $180,000 for its services. The nature of the work was not disclosed in the Merger Proxy.

58.     On or about February 2020, the Board of Directors entered negotiations with four parties that expressed interest in acquiring Bowl America. These parties are identified in the Merger Proxy as Parent (being Bowlero), Party X, Party Y (an affiliated entity of an existing Class A stockholder of the Company), and Party Z.[1] There is no disclosure whether prior to this time, the Board possessed any valuation or estimated valuation of the Company or what its financial worth would be either as an ongoing entity or in a sale to a willing buyer.

59.     Upon information and belief, Party Y is NIL Funding Corporation, a company affiliated with Plaintiffs.

60.     On February 19, 2020, the price of Bowl America's Class A stock (NYSE: BWL-A) closed at $15.20 per share. Yahoo! Finance, https://finance.yahoo.com/quote/BWL-A/history?period1=1580515200&period2=1582848000&interval=1d&filter=history&frequency=1d&includeAdjustedClose=true (last accessed July 26, 2021).

61.     On March 18, 2020, the Company closed all bowling centers as required by the orders from state and federal governments, in an effort to mitigate the spread of COVID-19.

62.     On March 25, 2020, the Board of Directors was advised by Foley and D&P that, as a result of market disruptions caused by the emerging COVID-19 outbreak, only two potential buyers remained.[2]

63.     On March 30, 2020, the Board of Directors advised D&P to pursue a transaction with Bowlero without specifying a price or price range, thereby abdicating their responsibilities and breaching their fiduciary duties.

---

[1] On March 11, 2020, the Board of Directors was advised by Foley and D&P that Party Z was no longer interested in purchasing the entire company.

[2] In its proxy, Bowl America identifies the two remaining prospective buyers as Bowlero and Company X. This is incorrect as Company Y (presumed to be NIL Funding Corporation) continued to express its interest in purchasing Bowl America.

4846-8005-5540, v. 1

64.     On April 10, 2020, D&P informed Mr. Sher and Ms. Dragoo that Bowlero had decided not to engage further in negotiations as it wanted to wait to determine the effect of COVID-19. D&P also advised Mr. Sher and Ms. Dragoo that Company X could only move forward with a much lower purchase price than what had been offered due to an inability to obtain financing, although none of these amounts are disclosed in the Merger Proxy. Due to Bowlero's suspension of all activities and Party X's inability to obtain financing, as well as the Company's closure of all of its bowling centers as a result of the COVID-19 pandemic, D&P recommended to Mr. Sher and Ms. Dragoo that the process be slowed or suspended completely.

65.     On April 13, 2020, the Board of Directors agreed to suspend negotiations with potential buyers until such time that the COVID-19 restrictions lapsed, or relatively normal operations resumed.

66.     From April 2020 through November 2020, D&P contacted Bowlero, Party X, Party Y (believed to be NIL Funding Corporation), and Party Z at various points to gauge their continued interest in purchasing Bowl America. During this time, D&P advised Mr. Sher and Ms. Dragoo that the continued impact of the COVID-19 pandemic was limiting the overall interest of bidders to reengage.

67.     As recently as November 28, 2020, D&P agreed to notify NIL Funding Corporation (believed to be Party Y in the Merger Proxy) if Bowl America decided to proceed with a sale. Despite that assurance, D&P and Bowl America's Board of Directors terminated all discussions with NIL Funding, electing to continue negotiations with Bowlero without contacting NIL Funding to determine if NIL Funding would agree to a higher purchase price or more favorable terms.

4846-8005-5540, v. 1

68.     On January 7, 2021, Bowlero presented Bowl America with a non-binding letter of intent with a proposed 180-day period of exclusivity. In this letter of intent, Bowlero offered Bowl America $44 million dollars in exchange for 100% of the Company.

69.     On January 12, 2021, Bowl America signed a letter of intent with Bowlero that provided for a purchase price of $44 million dollars and an exclusivity period of 90-days through April 12, 2021, which was subsequently extended to April 30, 2021.

70.     On May 27, 2021, the Board of Directors approved Bowlero's proposal to acquire Bowl America for $44 million dollars. At arriving at this price, the parties set the value of each share at $8.53 per share plus an additional dividend of up to $0.60 per share conditioned upon liquidating securities owned by the Company, for a total of $9.13 per share. In conjunction with the sale, the Board of Directors pledged to vote 100% of their shares in favor of the merger.

71.     On May 27, 2021, the day the merger agreement was signed, the price of a share of Bowl America's Class A stock was $10.50 per share, which already reflected a 31% loss in value since February 19, 2020, just before the pandemic began to rage.

72.     By agreeing to sell Bowl America for $8.53 per share, the Board of Directors accepted almost $2.00 less per share than what any shareholder could sell their shares for on the open market and more than a 40% discount to the pre-pandemic trading price. Instead of negotiating a premium, even to the $10.50 trading price, the Board of Directors negotiated a discounted purchase price, betraying the confidence bestowed upon them by Plaintiffs and other shareholders in violation of their fiduciary duties.

**D.     The Board of Directors Breached their Fiduciary Duties.**

      **a.     The Board of Directors Placed their Personal Interests Above the Best Interests of the Company and its Shareholders.**

16

73.     Upon information and belief, many, if not all, of the Board of Directors acquired their shares through an inheritance or by other means that did not require the exchange of consideration.

74.     Upon information and belief, because some or all of the Board of Directors did not pay the fair market value of their shares when they acquired them, they will receive a windfall from any sale, regardless of the price and, as a consequence, their self-interests in the merger thus diverge significantly from Class members. The public stockholders, such as Plaintiffs, will likely take significant losses as compared to certain members of Board of Directors who engaged in self-dealing by prioritizing their own interests over Class members.

75.     Due to the size of their stock holdings, the Board of Directors could not easily liquidate their stock. The merger presents the Board of Directors with one of their only options to liquidate their stock. Because of the limitations imposed on the Board of Directors due to the nature of their holdings and the profits they will derive from the sale of the Company, their interests are entirely different than the interests of Plaintiffs and other public shareholders.

76.     Upon information and belief, when Mr. Goldberg passed, the Board of Directors had no business plan in place and no interest in continuing to operate the business. For years they had recklessly failed both to develop a succession plan or to invest capital to modernize operations and maintain the value of the Company's assets.

77.     By agreeing to this merger, it is evident that the members of the Board of Directors are simply seeking to liquidate their holdings and earn a personal profit without any concern for maximizing the price for all shareholders, many of whom would lose significant amount of their investment.

78.     Plaintiffs and other similarly situated shareholders who paid valuable consideration for their shares will suffer significant financial losses as a result of the Board of Directors' complete failure to explore other strategic options for the Company to continue operating, or to obtain the maximum value for the Company.

> **b.     D&P's Fairness Opinion was the Result of Flawed Methodology and Incomplete Data which Resulted in a Gross Undervaluation of a Fair Price for Bowl America's Shareholders.**
>
> > **i.     The Fairness Opinion Fails to Account for the Value of Bowl America's Real Estate Assets which, Standing Alone, are Worth Significantly More than the Purchase Price.**

79.     On May 27, 2021, D&P provided a fairness opinion to the Board of Directors concerning the merger (the "***Opinion***").

80.     In its Opinion, D&P concludes that purchase price of $8.53 per share is fair to Bowl America's public shareholders.

81.     Upon information and belief, prior to the pandemic, the tax value of Bowl America's unencumbered real property assets alone was approximately $50 million dollars. The tax valuation of real property typically represents just a fraction of the property's actual value and reflects no value whatsoever for the Company's business.

82.     Upon information and belief, Bowl America's real estate holdings have and will continue to appreciate.    At the time of the sale, the Board of Directors failed to obtain any independent valuation of the Company's real estate holdings from which it could establish the true value of the Company.

83.     In connection with rendering the Opinion, D&P did not evaluate the Company's solvency or conduct an independent appraisal or physical inspection of any specific assets or liabilities (contingent or otherwise) or consider a prior valuation of Bowl America's real estate –

18

prepared by D&P for which it was paid $95,000. D&P, Bowl America, and the Director Defendants concealed the results of that valuation and omitted it from the Merger Proxy. Further, and inexplicably, those valuations were not used by D&P in evaluating the fairness of the Merger.

84.    By failing to consider the value of Bowl America's real property assets, D&P could not have reasonably concluded that the proposed merger was fair to the public shareholders.

85.    By concluding that the proposed merger in which Bowl America's Board of Directors have agreed to sell the Company at a price per share that is below the price that shareholders could receive on the open market, and far below the pre-pandemic price, D&P could not reasonably conclude that the merger was fair to stockholders.

86.    The May 21, 2021 engagement of D&P to provide the fairness Opinion by the Board of Directors presented a conflict of interest. In undertaking the engagement, D&P had a vested interest to conclude that the deal was fair to the shareholders because if D&P concludes that the deal is fair and the merger closes as a result, D&P will receive a $1 million dollar fee in connection with the sale of the Company, in addition to the fee for the fairness opinion. The amount of the payment D&P will receive contingent on the transaction closing was only disclosed after Plaintiffs, through counsel, specifically identified it as a material omission from the Preliminary Proxy Statement.  In addition, the Board of Directors engaged D&P to provide the fairness Opinion regarding the Bowlero merger despite the fact that D&P had recently provided services to Bowlero and might obtain additional engagements from Bowlero in the future, presenting further conflicts of interest for D&P.

87.    Further, D&P Opinion was flawed because D&P failed to consider future value, cash flows, or projections, all of which constitute factors that investment bankers regularly consider in determining whether a proposed merger is fair to stockholders.

88.     The Board of Directors, in relying upon D&P's flawed, incomplete, and biased opinion and data, failed to uphold their fiduciary duties to Plaintiffs and their fellow shareholders.

> **c.     The Board of Directors Used a Flawed Sales Process that was not Designed to Maximize the Purchase Price.**

89.     In agreeing to the merger with Bowlero, the Board of Directors agreed to terms that made it impossible to maximize the value of the purchase price including, but not limited to:

a.      Entering into an exclusivity provision while failing to negotiate a go-shop period that would have allowed the Company to confirm that another party would not pay more for Bowl America;

b.      Entering into a voting agreement which would assure the merger would be approved and discourage any other potential purchasers from making a bid;

c.      Limiting and barring any discussions or negotiations with respect to another acquisition proposal;

d.      Eliminating and prohibiting Class A stockholders from exercising any right to an appraisal; and

e.      Agreeing to a crippling breakup fee under which Bowl America would be required to pay up to $5.1 million, or 11.7% of the total guaranteed price of the deal, if Bowl America were to receive a better offer, effectively locking out any competitive offers.

90.     On the same day Bowl America entered into the merger agreement, the Board of Directors, likely recognizing that the Bowlero merger represents a prima facie breach of their fiduciary duties to Plaintiffs and Bowl America's other shareholders, unilaterally adopted a series of self-dealing amendments to Bowl America's by-laws, the first amendments since 1984. These amendments require Bowl America to indemnify and pay the directors' expenses for a lawsuit that arises out of their failure to protect their shareholders' interests and seek to deny a shareholder the

right to challenge the merger in a forum in the shareholder's state of residence other than the State of Maryland.

91.    In the Merger Proxy, the Board of Directors recognized that Bowl America's business had suffered as a result of the pandemic. In agreeing to sell Bowl America, after Bowl America's business had been temporarily and negatively impacted because of mandatory closures that resulted in a total interruption of all business activities instead of waiting for pandemic restrictions to ease and its business to recover, the Board of Directors breached their fiduciary duty to maximize the sales price. Bowl America is a debt-free company with adequate cash reserves, and there is absolutely no need to sell while the economy is still recovering from a global pandemic.

**E.    The Merger Proxy Omits or Misrepresents Material Information Necessary for Bowl America's Shareholders to Make an Informed Decision as to How to Vote.**

92.    In connection with upcoming shareholder vote on the merger, Defendants filed and disseminated a materially false and/or misleading Merger Proxy in contravention of §§14(a) and 20(a) of the 1934 Act and/or Defendants' duty of candor and full disclosure under state law. The Merger Proxy, which recommends that Bowl America shareholders vote in favor of the merger, misrepresents and fails to disclose material information necessary for the Company's public stockholders to make an informed decision as to whether to vote their shares in favor of the merger with Bowlero.

93.    The Merger Proxy represented to shareholders, among other things, that:

a.    "the merger agreement, including the merger...are fair to, and in the best interests of, the Company and its stockholders";

b.    "the board of directors unanimously resolved to recommend that stockholders of the Company approve the merger" and related transactions; and

     c.     it recommended the merger based, in part, on the opinion from D&P that the merger was fair, from a financial point of view, to shareholders.

94.     The Merger Proxy also omitted and/or misrepresented material information about the flawed sales process and the conflicts of interests that corrupted the sales process, including the following:

     a.     the basis for the Board of Directors selection of, and the process by which the Board of Directors identified and selected parties who might have been interested in pursuing a strategic transaction with the Company;

     b.     the details concerning the Board of Directors' consideration of other potential strategic alternatives or failure to consider such alternatives, including continuing as a stand-alone, independent company;

     c.     the basis for the Board of Directors' selection of, and the process by which the Board selected and retained D&P as its financial advisor on the merger;

     d.     the details surrounding D&P past and/or present engagements by Bowl America; and

     e.     the details surrounding D&P past and/or present engagements by Bowlero, and any fees paid to D&P pursuant to all such engagements.

95.     The failure to disclose the foregoing information renders the Merger Proxy false and materially misleading in that it gives Bowl America stockholders an incomplete and distorted picture of the sales process and leaves the stockholders unable to determine whether the Board of Directors took all steps necessary to maximize shareholder value.

96.     In order for the public stockholders to make an informed decision about whether to vote for the merger, Defendants were required to disclose even potential conflicts of interest. The stockholders are therefore entitled to know if their fiduciaries have interests in the transaction that

22

are even potentially in conflict with the stockholders' interest in maximizing value. Defendants here failed to disclose material information concerning actual and potential conflicts that burdened the sales process.

97.     The Merger Proxy also omitted and/or misrepresented material information about the intrinsic value of the Company, which makes it more likely that Bowl America's public stockholders will be misled into voting in favor of the merger without that material information regarding the critical decision they face.

98.     Without disclosure of the foregoing material information, Bowl America shareholders are unable to assess whether D&P's financial analyses, which supported its fairness Opinion, sufficiently valued the Company's intrinsic value.

99.     These omissions render the information concerning the financial analysis provided by D&P as contained in the Merger Proxy materially misleading.

100.     While the Board of Directors claim they thoroughly evaluated Bowl America as a stand-alone company and concluded that a reduction in the dividend would be necessary, the Board of Directors prepared absolutely no projections to rely upon in making this assessment. The Board of Directors could not adequately evaluate the Company's prospects as a stand-alone company, its ability to make capital improvements, or the expected return on investments for those improvements, and the impact on dividend payments without making financial projections. The Merger Proxy is devoid of any financial projections, depriving Plaintiffs and fellow shareholders of the right to make an informed decision on selling the Company. Nor did D&P conduct any such analysis.

101.     The Merger Proxy does not disclose why the Company does not have projections, whether the Board of Directors considered projections, whether the Board of Directors asked

management to prepare projections, or whether D&P requested projections. All of this information should be disclosed.

102.    The Board of Directors also cites "limited access to capital to finance capital improvements" as a factor in support of the merger. Bowl America owns its own facilities and has a strong balance sheet with no debt and liquid securities. The Board of Directors fails to mention any communications with banks, lenders, or other sources of capital or to provide any basis for this representation. This stunning lack of detail suggests that the Board of Directors made this representation while making no effort to determine whether it was true.

103.    The Board of Directors blindly accepted D&P's Opinion without reviewing it for its accuracy. Upon information and belief, the peer groups used by D&P for its analysis includes companies that own little or no unencumbered real estate. The Merger Proxy and Opinion do not describe how or why these companies were selected, which deprives the shareholders from assessing the credibility of D&P's analysis.

**F.    Bowlero and D&P Aided and Abetted the Board of Directors in Breaching Their Fiduciary Duties.**

104.    The Board of Directors expressed a clear intent to liquidate their holdings at any cost. In furtherance of that goal, the Board of Directors engaged D&P to ostensibly explore "strategic alternatives" that could include continuing to operate Bowl America as a stand-alone company. The use of the term "strategic alternatives" is pretextual, as the Board of Directors never seriously pursued anything but a sale.

105.    D&P found a willing buyer, Bowlero, which presented an unfair offer. In order to be handsomely compensated, D&P only needed to conclude that the offer was fair. D&P set out with the objective of finding that the merger was fair and selectively chose what information and

data could be relied upon to achieve that goal. In the process, D&P failed to consider assets or employ other methods of valuation that would objectively show that the merger is patently unfair.

106.    By insisting upon a merger that included provisions such as an onerous 11.7% breakup fee, no-shop provisions, and a voting agreement assuring the Merger would be approved by stockholders, Bowlero completely foreclosed the Board of Directors from soliciting or negotiating a better offer, thereby aiding and abetting the Board of Directors' breach of their common law and statutory fiduciary duties.

## CLASS ACTION ALLEGATIONS

107.    Plaintiffs repeat and reallege the paragraphs set forth above as if fully set forth herein.

108.    Plaintiffs bring this action individually and as a class action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure on their own behalf and as a class action on behalf of all holders of Bowl America Class A stock whom, as of May 27, 2021, are entitled to vote on the merger, and their successors in interest (the "*Class*"). Excluded from the Class are the Defendants named herein, their family members, heirs, and any person, firm, trust, corporation, or other entity related to, or affiliated with, any of the Defendants.

109.    This action is properly maintainable as a class action.

110.    The Class is so numerous that joinder of all members is impracticable. As of May 27, 2021, there were 3,746,454 shares of Bowl America's Class A stock outstanding, most of which are held by the Company's minority shareholders. Upon information and belief, there are over 700 members of the Class.

111.    There are questions of law and fact that are common to the Class, including, but not limited to:

a.  Whether Defendants breached their fiduciary duties of loyalty, good faith and/or due care with respect to Plaintiffs and other members of the Class in connection with the proposed Merger;

b.  Whether the Director Defendants breached their fiduciary duty to secure and obtain the best price reasonably available under the circumstances for the benefit of Plaintiffs and the other members of the Class in connection with the Merger;

c.  Whether the merger is entirely fair to the Class;

d.  Whether Defendants, in bad faith and for improper motives, impeded or erected barriers designed to discourage other potentially interested parties from making an offer to acquire the Company or its assets;

e.  Whether Defendants D&P and Bowlero aided and abetted any of the other Defendants breaches of fiduciary duties owed to Plaintiffs and the other members of the Class in connection with the proposed acquisition;

f.  Whether Defendants made materially false and misleading statements in or omitted material information from the Merger Proxy; and

g.  Whether Plaintiffs and the other members of the Class are entitled to damages as a result of Defendants' misconduct.

112.    Plaintiffs are committed to prosecuting this action and have retained competent counsel experienced in litigation of this nature. Plaintiffs' claims are typical of claims of the other members of the Class, and Plaintiffs have the same interests as the other members of the Class. All members of the Class have suffered the same harm.

113.    Defendants caused the same harm and damages to the Class through their material misrepresentations and breaches of fiduciary duty.

114.    Accordingly, Plaintiffs are adequate representatives of the Class and will fairly and adequately protect the interests of the Class.

4846-8005-5540, v. 1

115.    The prosecution of separate actions by the individual members of the Class would create a risk of inconsistent or varying adjudications with respect to the individual Class members that would establish incompatible standards of conduct for Defendants. Adjudications with respect to individual Class members would, as a practical matter, be dispositive, or would substantially impair the interests of the Class members.

116.    The questions of law and fact common to the members of the Class predominate over any questions affecting only its individual members, such that a class action is superior to any other available method for fairly and efficiently adjudicating the controversy.

**<u>COUNT I</u>**
**Violation of Section 14(a) and Rule 14a-9**
**of the Securities and Exchange Act of 1934**
**(Against Bowl America and the Director Defendants)**

117.    Plaintiffs repeat and reallege the paragraphs set forth above as if fully set forth herein.

118.    Section 14(a) of the Exchange Act, 15 U.S.C. §78n (a), prohibits any person soliciting a proxy from doing so "in contravention of such rules and regulations as the [Securities and Exchange] Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors."

119.    SEC Rule 14a-9, 17 C.F.R. §240.14a-9, promulgated pursuant to §14(a) of the 1934 Act, provides:

> No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

27

120.    Director Defendants prepared, reviewed and/or disseminated the false and misleading Merger Proxy which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading. As stated herein, the Merger Proxy misrepresented and/or omitted material facts, including material information about the unfair consideration offered in the merger, the actual intrinsic value of the Company, the flawed and unfair sales process orchestrated by Defendants, and the conflicts of interest that burdened the process.

121.    The omissions and false and misleading statements made by Defendants in the Merger Proxy constitute violations of §14(a) of the 1934 Act and SEC Rule 14a-9 promulgated thereunder, because such statements are materially false and/or misleading and were provided in at least a negligent manner. By virtue of their positions within the Company and/or roles in the process and in the preparation of the Merger Proxy, the Director Defendants were aware of this information and of their duty to disclose this information to public stockholders.

122.    The omissions and false and misleading statements in the Merger Proxy are material in that a reasonable shareholder would consider them important in deciding how to vote on the merger. In addition, a reasonable investor would view a full and accurate disclosure as having significantly altered the "total mix" of information made available in the Merger Proxy and in other information reasonably available to shareholders.

123.    By reason of the misconduct detailed herein, Bowl America and the Director Defendants are liable pursuant to §14(a) of the 1934 Act and SEC Rule 14a-9 promulgated thereunder.

**COUNT II**
**Violation of Section 20(a) of the**
**Securities and Exchange Act of 1934**

**(Against the Director Defendants)**

124.    Plaintiffs repeat and reallege the paragraphs set forth above as if fully set forth herein.

125.    The Director Defendants acted as controlling persons of Bowl America within the meaning of §20(a) of the 1934 Act.

126.    By virtue of their positions as officers and/or directors and/or controlling shareholders of Bowl America, and/or their participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Merger Proxy filed with the SEC, the Director Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiffs contend are false and misleading.

127.    Each of the Director Defendants were provided with or had unlimited access to copies of the Merger Proxy and other statements alleged by Plaintiffs to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

128.    The Merger Proxy details the Director Defendants' involvement in negotiating, reviewing and approving the merger and preparation of the Merger Proxy.

129.    The Merger Proxy contains the recommendation or authorization of each of the Director Defendants to approve the merger. They were thus directly involved in the making of this document.

130.    By reason of such conduct, the Director Defendants are liable pursuant to §20(a) of the 1934 Act.

<u>**COUNT III**</u>
**Breach of Fiduciary Duties**

**(Against the Director Defendants)**

131.    Plaintiffs repeat and reallege the paragraphs set forth above as if fully set forth herein.

132.    The Director Defendants stand in a fiduciary relationship to the Company, Plaintiffs, and other similarly situated shareholders. This fiduciary relationship imposes the common law duties of care, loyalty, candor, and good faith on the Director Defendants in the management and administration of the affairs of Bowl America and in the use and preservation of Bowl America's property and assets.

133.    To fulfill their fiduciary duties, the Director Defendants must perform their acts in good faith, in a manner that is in the best interest of the corporation, with the care that an ordinarily prudent person in a like position would use under similar circumstances, and in a manner that maximizes shareholder value.

134.    To fulfill their fiduciary duties, the Director Defendants must, in the event of a proposed sale or merger, maximize shareholder value. The Director Defendants cannot place their own personal self-interests above the interests of the shareholders.

135.    Based upon the actions and conduct set forth in this Complaint, including, but not limited to, agreeing to a sales price that was inadequate and unfair to Plaintiffs and Class members, derived from incomplete data, and resulted from a grossly inadequate flawed and conflicted process, the Director Defendants have breached their fiduciary duty to the Company, Plaintiffs, and other similarly situated shareholders.

136.    The Director Defendants' each have a fiduciary obligation to disclose all material information to Plaintiffs and the Class concerning the merger. The Director Defendants failed to adequately discharge their responsibility.

4846-8005-5540, v. 1

137.    Separately, the controlling stockholders, Macklin, Hull and Fabian, violated their fiduciary duties to the Class by entering into a self-dealing transaction (the merger) for their own self-interests and at the expense of public stockholders.

138.    Director Defendants are directly liable to shareholders for breach of fiduciary duties.

139.    As a result of the Director Defendants' breach of their fiduciary duties, Plaintiffs and other similarly situated shareholders have been harmed and continue to be harmed in that they will not receive fair and adequate consideration for their Bowl America Class A stock.

**COUNT IV**
**Breach of Md. Code Ann, Corp. & Ass'ns § 2-405.1(a)**
**(Against the Director Defendants)**

140.    Plaintiffs repeat and reallege the paragraphs set forth above as if fully set forth herein.

141.    Director Defendants owe the Company, Plaintiffs, and other similarly situated shareholders statutory fiduciary duties as set forth in Md. Code Ann., Corp. & Ass'ns § 2-405.1(a)

142.    To fulfill their statutory fiduciary duties, the Director Defendants must perform their acts in good faith, in a manner that is in the best interest of the corporation, and with the care that an ordinarily prudent person in a like position would use under similar circumstances.

143.    Based upon the actions and conduct set forth in this Complaint, including, but not limited to, agreeing to a sale price that was inadequate and unfair to Plaintiffs and Class members, derived from incomplete data, and resulted from a grossly inadequate flawed and conflicted process, the Director Defendants have breached their fiduciary duty to the Company, Plaintiffs, and other similarly situated shareholders.

4846-8005-5540, v. 1

144. The Director Defendants are directly liable to shareholders for breach of fiduciary duties.

145. As a result of the Director Defendants' breach of their fiduciary duties, Plaintiffs and other similarly situated shareholders have been harmed and continue to be harmed in that they will not receive fair and adequate consideration for their Bowl America Class A stock.

## COUNT V
### Against Bowlero for Aiding and Abetting the
### Director Defendants' Breaches of Fiduciary Duty

146. Plaintiffs repeat and reallege the paragraphs set forth above as if fully set forth herein.

147. The Director Defendants owed and owe fiduciary duties to the Company, which they breached for the reasons alleged herein.

148. Bowlero was aware of the Director Defendants' fiduciary status.

149. Bowlero knowingly aided and abetted, and provided substantial assistance to, the Director Defendants' in breaching their fiduciary duties to Class members by entering into an unfair merger and filing a false and misleading Merger Proxy.

150. By providing substantial assistance in the Director Defendants' if the merger is consummated, Bowlero will acquire Bowl America at a grossly inadequate price that is far below its value which will cause Plaintiffs and other similarly situated public shareholders to sustain significant damages.

## COUNT VI
### Against D&P for Aiding and Abetting the
### Board of Directors Breaches of Fiduciary Duty

151. Plaintiffs repeat and reallege the paragraphs set forth above as if fully set forth herein.

4846-8005-5540, v. 1

152.    Director Defendants owed and owe fiduciary duties to the Company, which they breached for the reasons alleged herein.

153.    D&P was aware of the Director Defendants' fiduciary status.

154.    D&P knowingly aided and abetted, and provided substantial assistance to, the Director Defendants' filing of a false and misleading Merger Proxy which was in violation of the Board of Directors' fiduciary duties to the Company.

155.    By providing substantial assistance in the Board of Directors' filing of a false and misleading Merger Proxy, if this merger is consummated, Bowlero will acquire Bowl America at a grossly inadequate price that is far below market value which will cause Plaintiffs and other similarly situated public shareholders to sustain certain and significant damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs' respectfully request that the Court enter judgment as follows:

A.    certifying the Class as set forth herein and designating Plaintiffs as the representatives thereof;

B.    declaring the Merger Proxy materially false and misleading in violation of Section 14(a) of the Securities and Exchange Act of 1934 and Rule 14a-9;

C.    finding that the Director Defendants violated Section 20(a) of the Securities and Exchange Act of 1934;

D.    declaring that the Director Defendants breached their fiduciary duties;

E.    finding that D&P and Bowlero aided and abetted the Director Defendants' breaches of fiduciary duties owed to the Company and stockholders awarding Plaintiffs and the Class damages sustained as a result of Defendants' unlawful conduct;

F.    awarding Plaintiffs their reasonable attorneys' fees, expenses, expert fees and costs; and

G.    Such other and further relief as the Court deems just and equitable.

Respectfully submitted,

**COHEN MILSTEIN SELLERS & TOLL PLLC**

*/s/ Daniel S. Sommers*

DANIEL S. SOMMERS (Bar No. 15822)
1100 New York Ave. NW, Fifth Floor
Washington, D.C. 20005
Telephone: 202-408-4600
Fax: 202- 408-4699
Email:    dsommers@cohenmilstein.com

RICHARD A. SPEIRS (New York Bar #2049948)
AMY MILLER (New York Bar #4029948)
88 Pine Street, 14th Floor
New York, NY 10005
Phone: 212-838-7797
Fax: 212-838-7745
Email:    rspeirs@cohenmilstein.com
         amiller@cohenmillstein.com
*Counsel for Plaintiffs*

**KOHRMAN JACKSON & KRANTZ LLP**

BRETT S. KRANTZ (0069238)[3]
DEREK P. HARTMAN (0087869)[4]
One Cleveland Center, 29th Floor
1375 East Ninth Street
Cleveland, Ohio 44114
Phone: 216-696-8700
Fax: 216-621-6536
Email: bk@kjk.com; mdr@kjk.com; dph@kjk.com
*Co-Counsel for Plaintiffs*

---

[3] *Pro Hac Application will be submitted*
[4] *Pro Hac Application will be submitted*

4846-8005-5540, v. 1

## **JURY DEMAND**

Plaintiffs respectfully demands a trial by jury pursuant to Fed. R. Civ. P. 38.

*/s/ Daniel S. Sommers*
_____

4846-8005-5540, v. 1