**IN THE UNITED STATES DISTRICT COURT**
**FOR DISTRICT OF MARYLAND**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| Anita G. Zucker, Trustee of the Anita G. Zucker | * | |
| Trust Dated April 4, 2017, as Subsequently | * | |
| Amended or Restated, et al. | * | |
| | * | |
|     Individually and on behalf of all | * | |
|     others similarly situated, | * | No. 1:21-cv-01967-SAG |
| | * | |
|         Plaintiffs, | * | |
| | * | |
|     v. | * | |
| | * | |
| Bowl America, Inc., et al. | * | |
| | * | |
|         Defendants. | * | |

**OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION,**
**APPOINTMENT OF CLASS REPRESENTATIVES, AND**
**<u>APPOINTMENT OF CLASS COUNSEL</u>**

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ................................................................................................ ii

**INTRODUCTION** ........................................................................................................... 1

**RELEVANT FACTUAL BACKGROUND** ................................................................... 3

**LEGAL STANDARD** .................................................................................................... 5

**ARGUMENT** .................................................................................................................. 6

**Plaintiffs' Proposed Class as Defined in the TAC Cannot Be Certified** ............................. 6

**Plaintiffs' Three Proposed Class Representatives Do Not Satisfy the Necessary Requirements Under Rule 23** ........................................................................................ 11

None of the Plaintiffs would be a common, typical, or adequate representative of the Proposed Class ................................................................................................................ 12

Plaintiff Zucker further fails as a common, typical, or adequate representative of the Proposed Class because of her affiliation with a competing bidder ..................................... 13

Plaintiff Fine abstaining from voting on the transaction renders her an uncommon, atypical, and inadequate representative of the Proposed Class ......................................................... 16

As the Proposed Class is currently defined, Plaintiff Risner is not a common, typical, or adequate representative ................................................................................................... 17

**If The Class Is Narrowed, Plaintiffs Have Not Established that the Class Is So Numerous as to Make Joinder Impracticable** ............................................................................... 17

**CONCLUSION** ............................................................................................................. 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alston v. Virginia High Sch. League, Inc.*,
184 F.R.D. 574 (W.D. Va. 1999) ............................................................................................13

*Am. Exp. Co. v. Italian Colors Rest.*,
570 U.S. 228 (2013) ..................................................................................................................5

*Amchem Prod., Inc. v. Windsor*,
521 U.S. 591 (1997) ................................................................................................................11

*In re Best Lock Corp. S'holder Litig.*,
845 A.2d 1057 (Del. Ch. 2001) ........................................................................................10, 16

*Birnberg v. Milk St. Residential Assocs., Ltd. P'ship*,
2003 WL 21995177 (N.D. Ill. Aug. 20, 2003) ................................................................13, 17

*Brady v. Thurston Motor Lines*,
726 F.2d 136 (4th Cir. 1984) ............................................................................................17, 18

*Brandriff v. Dataw Island Owners' Ass'n, Inc.*,
No. CV 9:07-3361-CWH, 2010 WL 11534520 (D.S.C. Aug. 6, 2010) ............................13, 17

*Broussard v. Meineke Disc. Muffler Shops, Inc.*,
155 F.3d 331 (4th Cir. 1998) ..................................................................................................14

*Bruhl v. Price Waterhousecoopers Int'l*,
275 F.R.D. 684 (S.D. Fla. 2008) .............................................................................................10

*Chase Manhattan Bank v. Iridium Afr. Corp.*,
2004 WL 323154 (D. Del. Feb. 13, 2004) ..............................................................................10

*Comcast Corp. v. Behrend*,
569 U.S. 27 (2013) ....................................................................................................................6

*Davis v. Comed, Inc.*,
619 F.2d 588 (6th Cir. 1980) ..................................................................................................15

*Deiter v. Microsoft Corp.*,
436 F.3d 461 (4th Cir. 2006) ..................................................................................................11

*Fleck v. Cablevision VII, Inc.*,
763 F. Supp. 622 (D.D.C. 1991) .............................................................................................10

*Ganesh, LLC v. Computer Learning Centers, Inc.*,
     183 F.R.D. 487 (E.D. Va. 1998) .......................................................................18

*Gariety v. Grant Thornton, LLP*,
     368 F.3d 356 (4th Cir. 2004) ..............................................................................6

*Gen. Tel. Co. of Sw. v. Falcon*,
     457 U.S. 147 (1982)...........................................................................................11

*Gray v. Hearst Commc'ns, Inc.*,
     444 F. App'x 698 (4th Cir. 2011) ........................................................................8

*Gunnells v. Healthplan Servs., Inc.*,
     348 F.3d 417 (4th Cir. 2003) ..............................................................................6

*Hewlett v. Premier Salons Int'l, Inc.*,
     185 F.R.D. 211 (D. Md. 1997) (Chasanow, J.)....................................................6

*Kahn v. Household Acquisition Corp.*,
     591 A.2d 166 (Del. 1991) ....................................................................................9

*Kamerman v. Ockap Corp.*,
     112 F.R.D. 195 (S.D.N.Y. 1986) .......................................................................16

*Lienhart v. Dryvit Sys., Inc.*,
     255 F.3d 138 (4th Cir. 2001) ..............................................................................15

*Louers v. Lacy*,
     No. CIV. JKS-10-2292, 2011 WL 6152949 (D. Md. Dec. 8, 2011) (Schulze,
     M.J.) .....................................................................................................................8

*MAZ Partners LP v. Shear*,
     No. CV 11-11049-PBS, 2016 WL 183519 (D. Mass. Jan. 14, 2016)....................9

*Murdoch v. Rosenberg & Assocs., LLC*,
     No. RWT 12-CV-2234, 2013 WL 1209144 (D. Md. Mar. 22, 2013) (Titus, J.) ...........6, 11, 12

*N.J. Carpenters Pension Fund v. infoGROUP, Inc.*,
     No. CIV.A. 5334VCN, 2013 WL 610143 (Del. Ch. Feb. 13, 2013) .........................8

*In re Nationwide Health Properties, Inc.*,
     No. 24-C-11-001476, 2011 WL 10603183 (Md. Cir. Ct. May 27, 2011) .................8

*Neil v. Zell*,
     275 F.R.D. 256 (N.D. Ill. 2011)..........................................................................16

*Parrish v. Nat'l Football League Players Ass'n*,
     No. C 07-00943 WHA, 2008 WL 1925208 (N.D. Cal. Apr. 29, 2008)..................16

*Piotrowski v. Wells Fargo Bank, NA*,
  No. CIV.A. DKC 11-3758, 2015 WL 4602591 (D. Md. July 29, 2015)
  (Chasanow, J.)..................................................................................................8

*In re PNB Holding Co. S'holders Litig.*,
  No. CIV.A. 28-N, 2006 WL 2403999 (Del. Ch. Aug. 18, 2006) ............................................9

*Robert Alan Ins. Agency v. Girard Bank*,
  107 F.R.D. 271 (E.D. Pa. 1985)..................................................................................15

*Schy v. Susquehanna Corp.*,
  419 F.2d 1112 (7th Cir. 1970) ...............................................................................11

*Sharp Farms v. Speaks*,
  917 F.3d 276 (4th Cir. 2019) ................................................................................11

*Shenker v. Laureate Educ., Inc.*,
  983 A.2d 408 (Md. 2009) ......................................................................................8

*In re Southeast Hotel Properties.*,
  151 F.R.D. 597 (W.D.N.C. 1993)..............................................................................10

*Stalling v. Califano*,
  86 F.R.D. 140 (N.D. Ill. 1980)................................................................................18

*Talley v. ARINC, Inc.*,
  222 F.R.D. 260 (D. Md. 2004) (Bennett, J.) .............................................................17

*TBK Partners v. Chomeau*,
  104 F.R.D. 127 (E.D. Mo. 1985) ...........................................................................13

*The Chase Manhattan Bank v. Iridium Afr. Corp.*,
  No. 00-564-RRM(JJF) (MPT), 2002 WL 732087 (D. Del. Apr. 5, 2002) .............................10

*Valentino v. Howlett*,
  528 F.2d 975 (7th Cir. 1976) ................................................................................18

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011)...........................................................................................5, 6

*Wu v. MAMSI Life & Health Ins. Co.*,
  269 F.R.D. 554 (D. Md. 2010) (Bennett, J.) .............................................................8

*Zimmerman v. Bell*,
  800 F.2d 386 (4th Cir. 1986) ................................................................................8

## Other Authorities

Fed. R. Civ. P. 23 ................................................................................ *passim*

Defendants Cheryl A. Dragoo, Allan L. Sher[1], Merle Fabian, Gloria M. Bragg, and Nancy E. Hull ("Defendants"), by and through their undersigned counsel, hereby file this Opposition to Plaintiffs' Motion for Class Certification ("Motion")[2] and state as follows:

### INTRODUCTION

As set forth in the Court's Memorandum Opinion dated October 11, 2022, Plaintiffs' sole remaining allegation from the Third Amended Complaint ("TAC") is that Defendants breached their fiduciary duties of care and good faith in approving a termination fee as part of the merger transaction.  (ECF No. 52).  Plaintiffs now seek to certify a class of all holders of Bowl America Class A common stock, aside from the Defendants, who were both entitled to vote on the merger and continued to hold such stock until the closing of the merger on August 18, 2021 (the "Proposed Class").  Pl. Mem. at 1–2.  Plaintiffs have failed to meet their burden to establish the class certification requirements under Rule 23(a) and Rule 23(b)(3), and the class should not be certified for three key reasons.

*First*, Plaintiffs' Proposed Class is overbroad and improperly seeks to include shareholders who are opposed to the claimed interest of the putative class and voted ***in favor*** of the merger; such shareholders would constitute the majority of the Proposed Class as defined.  Plaintiffs challenge the approval of the merger because of the agreed-upon termination fee, and seek damages for the Proposed Class related to this approval.  However, the Proposed Class includes *all* Class A common stockholders (excluding only the Defendants and their family or affiliates), including the significant majority of the non-director shareholders who voted in favor of the

---

[1] Mr. Sher died on June 26, 2022.  (ECF 37).  As of the date of this Response, Plaintiffs have taken no action to dismiss the decedent or to attempt to substitute any party for the decedent.  Mr. Sher is being included in this Response for the sake of completeness pending resolution of his role in this action.

[2] Citations to Plaintiffs' Memorandum of Law In Support of Plaintiffs' Motion for Class Certification, Appointment of Class Representatives, and Appointment of Class Counsel filed on February 17, 2023 (ECF No. 65), are in the form "Pl. Mem. at __."

merger.  Simply stated, the *majority* of Plaintiffs' Proposed Class – which again seeks to challenge the approval of the merger – actually voted ***in favor*** of the transaction that the Proposed Class purports to challenge.  The Proposed Class also improperly includes shareholders who, when given the opportunity to object and vote against the transaction, did not do so, and chose instead to abstain or not vote entirely, thereby acquiescing to the majority of the non-Defendant shareholders who overwhelmingly voted to approve the merger.  These two groups, which constitute the majority of the Proposed Class, plainly are not similarly situated to those who voted against the transaction.  Among other things, those who voted in favor or abstained will be subject to different and significant defenses like acquiescence, waiver, and estoppel that do not apply to those who voted against the merger.  Accordingly, Plaintiffs' Motion should be denied.  In the alternative, if the Court chooses to certify a class, the Proposed Class should be limited only to those shareholders who held Bowl America Class A stock on May 27, 2021, continued to hold the stock through the closing of the merger on August 18, 2021, and did in fact vote against the merger (the "Narrowed Class").

*Second*, Plaintiffs' three proposed representatives are improper representatives for multiple reasons.  As stated above, the significant majority of the Proposed Class voted in favor of the merger.  None of the Plaintiffs did so, and therefore none would be a common, typical, or adequate representative of the significant majority of the Proposed Class as a whole.  That is, if the Proposed Class is certified as requested (i.e., all non-director stockholders, whether they voted for or against the merger), the interests of the proposed representatives are directly at odds with those of the majority of the Proposed Class members who voted in favor of the merger.  Further, Plaintiff Zucker is not common, typical, or an adequate representative because she was affiliated with one of the bidders in the sales process, i.e., she approached the proposed merger from the far different

perspective of a potential bidder, and not as a typical shareholder.  Plaintiff Fine is also not common or typical of the Proposed Class, as she chose not to vote at all, either for or against the merger, again triggering different defenses from the shareholders who voted against the merger.

*Third*, if the class is appropriately narrowed, Plaintiffs have not met their burden of demonstrating that the remaining class is sufficiently numerous to render joinder impracticable. *See* Fed. R. Civ. P. 23(a)(1).

## RELEVANT FACTUAL BACKGROUND

On March 19, 2019, the Bowl America, Inc. ("Bowl America" or the "Company") Board decided to explore a potential sale of the Company.  Bowl America Inc., Proxy Statement (Schedule 14A), at 13 (July 13, 2021) ("Proxy").[3]  The Company's advisor, Duff & Phelps Securities LLC ("D&P"), contacted over one hundred potential purchasers to gauge interest in a transaction with the Company.  *Id.*  After evaluating different options and reviewing multiple offers, the Company signed a letter of intent with Bowlero Corp. ("Bowlero") on January 12, 2021, with a 90-day exclusivity period.  *Id.* at 14; TAC ¶ 85.  Counsel for the Company and Bowlero then engaged in a lengthy and thorough arm's-length negotiation of the merger agreement.  Proxy at 14–15.  Near the end of that negotiation, on May 24, 2021, Bowlero proposed a termination fee and reimbursement of third-party expenses in the event that the Company terminated the merger for a superior proposal.  *Id.* at 16.  While the Company was unable to persuade Bowlero to accept termination provisions more favorable to Bowl America, it was able to persuade Bowlero to agree to allow the Company to issue a fixed $0.60 per share dividend as part of transaction consideration. *Id.*  On May 27, 2021, over two years after the Company began the sales process, the Board unanimously voted to approve Bowlero's merger proposal, and the parties executed the merger

---

[3] A copy of the Proxy was attached as Exhibit 1 to Defendants' January 28, 2022 motion to dismiss (ECF No. 28).

agreement that same day. *Id.* at 17; TAC ¶ 87.  The Company later issued its Schedule 14A Proxy Statement on July 13, 2021, fully informing the shareholders of the sales process and the proposed merger terms, including the termination fee.  Proxy at 12–17; *see also id.* at 5 ("The merger agreement provides that, upon termination of the merger agreement under specific circumstances, the Company would be required to pay Parent a termination fee equal to $1,645,000 plus reimburse Parent for its reasonable and documented third party expenses in an aggregate amount not to exceed $3,500,000.").  On August 11, 2021, the stockholders overwhelmingly voted to approve the merger between the Company and Bowlero.  The transaction closed on August 18, 2021.

As of the merger date, there were 3,746,454 outstanding shares of Class A common stock (entitled to one vote per share) and 1,414,517 shares of Class B common stock (entitled to ten votes per share, for a total of 14,145,170 votes).  *See* Declaration of Cheryl A. Dragoo ("Dragoo Decl.") ¶ 3, 4.  Thus, the total number of potential votes as of the merger date was 17,891,624.  Proxy at 8; TAC ¶ 10.  The initial Director Defendants (including Ruth Macklin, who has since been dismissed from the case) owned or controlled 14,071,417 of those votes, largely via ownership of the Class B stock.  TAC ¶ 29.[4]  At the August 11, 2021 stockholder meeting, there were 15,578,154 votes in favor of the merger, 696,305 votes against the merger, 1,485 votes abstained, and the holders of 1,615,680 votes did not attend or cast a vote.  *See* Dragoo Decl. ¶ 7.  After removing the 14,071,417 votes controlled by the directors prior to Ms. Macklin's resignation, the remaining 3,820,207 potential votes still overwhelmingly approved the merger: 1,506,737 for,

---

[4] On March 15, 2023, Plaintiffs agreed and stipulated to voluntarily dismiss Ms. Macklin as a defendant because she resigned from the Board prior to the consideration of the merger due to ill health and did not participate in any discussions regarding the termination fee prior to her resignation.  (ECF No. 71).  Accordingly, Ms. Macklin's shares should not be counted among the votes controlled by Defendants because she was no longer a director after May 17, 2021 and is no longer a defendant in this action.  Accordingly, the remaining Defendants controlled 12,052,762 votes as of the August 11, 2021 stockholder meeting.

696,305 against, 1,485 abstained, and 1,615,680 did not vote. *Id.* ¶ 8. If the 1.6 million votes who neither voted nor abstained (and therefore do not count towards the total) are removed, more than 68% of the **non-director** votes voted to approve the merger with full knowledge of the termination fee (1,506,737 votes divided by 2,204,527 total votes). *Id.* ¶ 9.[5] By contrast, Plaintiffs Zucker and Risner voted against the merger, and Plaintiff Fine chose not to vote at all. *See* Stipulation and [Proposed] Order Regarding Joinder of Additional Plaintiffs (ECF No. 62) at 2.

On August 4, 2021, Plaintiffs filed their initial complaint in this action. (ECF No. 1). Plaintiffs then amended their complaint twice, on August 5, 2021, and November 29, 2021, respectively. (ECF Nos. 3, 25). On May 27, 2022, this Court issued a Memorandum Opinion and Order dismissing without prejudice all claims and allegations in the second amended complaint, with the exception of the narrow fiduciary duty claim based upon the termination fee approved by the Board as part of the merger agreement. (ECF Nos. 32–33). On October 11, 2022, in response to Plaintiffs filing the TAC, the Court reiterated that Plaintiffs' sole remaining allegation related to the narrow fiduciary duty claim involving the approval of the termination fee as part of the merger transaction. (ECF No. 52 at 1).

## LEGAL STANDARD

Because "[t]he class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only,'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011), Rule 23 "imposes stringent requirements for certification that in practice exclude most claims." *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 234 (2013). "Rule 23 does not set forth a mere pleading standard"; rather, a plaintiff must satisfy with evidentiary proof the four prerequisites of Rule 23(a)—numerosity, commonality, typicality, and adequate representation.

---

[5] Again, if Ms. Macklin's 2,018,655 votes are removed from the votes controlled by Defendants, that number increases to nearly 83.5% (3,525,392 votes in favor out of 4,223,182 votes cast). *Id.* ¶ 11.

*Murdoch v. Rosenberg & Assocs., LLC*, No. RWT 12-CV-2234, 2013 WL 1209144, at *7 (D. Md. Mar. 22, 2013) (Titus, J.) (quoting *Wal-Mart Stores*, 564 U.S. at 350); *see Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013).

Plaintiff also must show that the Proposed Class action satisfies one of the enumerated conditions of Rule 23(b). *See Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 423 (4th Cir. 2003). Under Rule 23(b)(3), a class may be certified only if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

A district court must undertake a "rigorous analysis" to ensure that the class certification requirements have been satisfied. *Hewlett v. Premier Salons Int'l, Inc.*, 185 F.R.D. 211, 215 (D. Md. 1997) (Chasanow, J.). The Fourth Circuit has written that:

> If it were appropriate for a court simply to accept the allegations of a complaint at face value in making class action findings, every complaint asserting the requirements of Rule 23(a) and (b) would automatically lead to a certification order, frustrating the district court's responsibilities for taking a close look at relevant matters . . . for conducting a rigorous analysis of such matters . . . and for making findings that the requirements of Rule 23 have been satisfied.

*Gariety v. Grant Thornton, LLP*, 368 F.3d 356, 365 (4th Cir. 2004) (internal citations and quotation marks omitted).

## ARGUMENT

Plaintiffs' Motion fails to meet their burden for establishing the necessary requirements to certify a class and should therefore be denied for three key reasons, explained in more detail below.

## I.    Plaintiffs' Proposed Class as Defined in the TAC Cannot Be Certified

Plaintiffs seek to challenge the approval of the merger agreement as a breach of the Defendants' fiduciary duties. Plaintiffs' Proposed Class would include all Class A common

6

stockholders, excluding only the Defendants and their families and affiliates, who, as of May 27, 2021, were both entitled to vote on the merger and continued to hold such stock until the closing of the merger on August 18, 2021. This Proposed Class is plainly overbroad and should not be certified as defined because the majority of the Proposed Class members, possessing all the material information needed to make an informed vote,[6] voted in favor of the transaction, meaning they affirmatively agreed with the Defendants' actions to approve the merger. This Proposed Class therefore presents a number of critical issues to Plaintiffs' claim, most obviously the fact that the majority of Plaintiffs' Proposed Class in fact approved of the transaction and wanted it to go through. As a result, these shareholders have acquiesced to the merger decision, and have waived and are estopped from now reversing course and challenging the approval. In addition, alleging a class in which members were diametrically opposed in their positions on the transaction – with the majority being in favor of the transaction that the minority of the class now challenges – renders impossible the commonality required by Rule 23(a)(2), creates confusion as to the "interests of the class" under Rule 23(a)(4), and leads to questions of acquiescence that predominate over other class-wide questions.

Since the majority of the non-Defendant shareholders, with full knowledge of the merger terms and the termination fee at issue, voted overwhelmingly to approve the merger, Plaintiffs' claims should be denied entirely. In short, the majority approval by non-Defendant shareholders should render Plaintiffs' objection of no consequence. Nevertheless, if the Court certifies any class as sought by Plaintiffs, the class should be limited only to those shareholders who voted *against* the transaction and held their shares through the closing on August 18, 2021.

---

[6] Plaintiffs initially alleged that the Company made inadequate disclosures to shareholders in violation of Section 14(a) of the Securities Exchange Act of 1934, but the Court dismissed those claims. (ECF No. 32 at 10–11).

The party moving for class action certification bears the burden of "demonstrat[ing] that the class members have suffered the same injury, and that the claim depends upon a common contention that is capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Louers v. Lacy*, No. CIV. JKS-10-2292, 2011 WL 6152949, at *4 (D. Md. Dec. 8, 2011) (Schulze, M.J.) (citing *Gray v. Hearst Commc'ns, Inc.*, 444 F. App'x 698, 700 (4th Cir. 2011)).  The moving party cannot satisfy this burden "if the court must investigate each plaintiff's individual claim[s]." *Id.* (citing *Wu v. MAMSI Life & Health Ins. Co.*, 269 F.R.D. 554, 559 (D. Md. 2010) (Bennett, J.)). "When individual rather than common issues predominate, the economy and efficiency of class action treatment are lost and the need for judicial supervision and the risk of confusion are magnified."  *Piotrowski v. Wells Fargo Bank, NA*, No. CIV.A. DKC 11-3758, 2015 WL 4602591 (D. Md. July 29, 2015) (Chasanow, J.) (citing *Zimmerman v. Bell*, 800 F.2d 386, 389 (4th Cir. 1986)).

The fact that a majority of non-Defendant shareholders voted in favor of the transaction or did not vote at all means that, as a matter of law, these shareholders cannot challenge the merger transaction as Plaintiffs intend via their Proposed Class.  Under the acquiescence doctrine, "[a] fully informed, uncoerced shareholder is precluded under Delaware law from challenging a merger if he has voted in favor of the transaction."  *N.J. Carpenters Pension Fund v. infoGROUP, Inc.*, No. CIV.A. 5334VCN, 2013 WL 610143, at *7 (Del. Ch. Feb. 13, 2013).[7]  Put simply, the acquiescence doctrine provides that shareholders "cannot assume a pose of approval in the voting

---

[7] Maryland courts "have historically found Delaware law in matters involving business law highly persuasive."  *In re Nationwide Health Properties, Inc.*, No. 24-C-11-001476, 2011 WL 10603183, at *8 (Md. Cir. Ct. May 27, 2011); *Shenker v. Laureate Educ., Inc.*, 983 A.2d 408, 427 (Md. 2009) (Maryland courts routinely refer to "Delaware's acknowledged leadership in developing a coherent body of corporate law to which we and many other states ordinarily look for guidance.").

process and then seek to litigate under a contrary position." *Kahn v. Household Acquisition Corp.*, 591 A.2d 166, 177 (Del. 1991); *see In re PNB Holding Co. S'holders Litig.*, No. CIV.A. 28-N, 2006 WL 2403999, at *21 (Del. Ch. Aug. 18, 2006) ("If informed, uncoerced stockholders wish to challenge a transaction, the least that can be expected of them is that they not endorse it through a yes vote in the first instance . . . [t]he ballot box is the most important place to register opposition, not the courthouse.").

Here, when it came time to vote on the merger, over 15 million shares exercised their rights and voted in favor of the transaction. Even after removing the Defendants' votes from the equation, more than **68%** of those in the Proposed Class, a <u>significant</u> majority, chose to vote in favor of the merger and the termination fee that was a part of the merger proposal; that number jumps to 83.5% now that Ms. Macklin has been dismissed as a Defendant. Stipulation of Dismissal (ECF No. 71); Dragoo Decl. ¶¶ 7–11. The Proposed Class, as a group, thus approved of the merger in a landslide. This uncontroverted fact precludes class certification. Indeed, when faced with a near identical issue, the district court in *MAZ Partners LP v. Shear* denied a motion to certify a class of all Class A shareholders. No. CV 11-11049-PBS, 2016 WL 183519, at *9 (D. Mass. Jan. 14, 2016). In *MAZ*, the plaintiff, like Plaintiffs here, alleged that defendant directors breached their fiduciary duty in connection with a merger transaction. *Id.* at *1. The court declined to certify the class because the shareholders who voted for the merger were subject to the acquiescence defense, while the lead plaintiff who voted against the transaction was not. *Id.* at *6. The court was unpersuaded by plaintiff's argument relating to "alleged material omissions" from the Proxy Statement, stating that regardless of how the Proxy arguments played out during summary judgment, "the shareholders who voted for the merger will have to surmount a significant

additional obstacle to achieve a recovery" that the shareholders who voted against the transaction will not. *Id.*[8]

Courts have applied the acquiescence doctrine both to shareholders who voted in favor of a transaction and to shareholders who did not vote at all, whether for or against the transaction. *See In re Best Lock Corp. S'holder Litig.*, 845 A.2d 1057, 1077 n.82 (Del. Ch. 2001) (discussing how it is "within the doctrine of acquiescence to hold that assent to a proposed corporate act will be *inferred* in a case where a stockholder, with *full knowledge* of an intended invasion of his rights and *an opportunity to dissent, stands by during the progress of a proceeding . . .* ") (emphasis added); *see also The Chase Manhattan Bank v. Iridium Afr. Corp.*, No. 00-564-RRM(JJF) (MPT), 2002 WL 732087, at *7 (D. Del. Apr. 5, 2002), *report and recommendation rejected sub nom. on other grounds Chase Manhattan Bank v. Iridium Afr. Corp.*, 2004 WL 323154 (D. Del. Feb. 13, 2004) (discussing cases holding that stockholder "had acquiesced in or ratified a corporate action by failing to object to or vote against the action."); *see also Fleck v. Cablevision VII, Inc.*, 763 F. Supp. 622, 627 (D.D.C. 1991) ("Plaintiffs' failure to have voted on the proposed amendment and transaction in this case (although they could have) poses a similar bar to class certification.").

The acquiescence doctrine is particularly relevant in this case, as this Court has already determined that no material information was misrepresented or omitted from the Proxy. (ECF No.

---

[8] Plaintiffs' case law in support of their argument for commonality suffers from a similar fatal factual distinction. In both *Bruhl v. Price Waterhousecoopers Int'l* and *In re Southeast Hotel Properties Ltd. P'ship Investor Litig.*, the allegations stated that defendants had a duty to disclose information concerning the transaction, which may have affected voters' investment judgment, but that they did not disclose those material facts. 257 F.R.D. 684, 698 (S.D. Fla. 2008); 151 F.R.D. 597, 602 (W.D.N.C. 1993). The courts in both cases then certified a class comprised of all stockholders, as everyone alike did not have all the material information when it came time to cast their votes. *Bruhl*, 257 F.R.D. at 699; *In re Southeast Hotel Properties.*, 151 F.R.D. at 602. Again, to the extent Plaintiffs once argued that Defendants failed to disclose material facts, the Court dismissed those Section 14 claims. (ECF No. 32 at 10–11). As everyone in the Proposed Class had all the material information to make an informed vote, cases involving inadequate disclosure challenges are not comparable or instructive.

32 at 10–11, 13–14, 18–19).   Thus, the 68-84% of shareholders who voted in favor of the

transaction, as well as those shareholders who chose not to vote at all, held all the necessary

information to make an informed and educated decision.  *See* Proxy at 5 (describing the termination

fee in detail).   Therefore, the acquiescence doctrine bars Plaintiffs' Proposed Class claim, and

Plaintiffs' Motion should be denied.  *See Schy v. Susquehanna Corp.*, 419 F.2d 1112, 1116–17

(7th Cir. 1970) (affirming denial of class certification motion "[s]ince over eighty percent of the

class voted in favor of the proposal of which plaintiff's suit complains").  In the alternative, if any

class is certified, the class should be narrowed to only those who voted against the merger.

## II.   Plaintiffs' Three Proposed Class Representatives Do Not Satisfy Rule 23's Requirements

Each of Plaintiffs' three Proposed Class representatives fail to satisfy the requirements for

certification under Rule 23 given the alleged Proposed Class.  Rule 23(a) provides that "[o]ne or

more members of a class may sue . . . as representative parties on behalf of all members only if:

(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of

law or fact common to the class; (3) the claims or defenses of the representative parties are typical

of the claims or defenses of the class; and (4) the representative parties will fairly and adequately

protect the interests of the class."  Fed. R. Civ. P. 23(a).  Both the Fourth Circuit and the Supreme

Court have instructed that commonality, typicality, and adequacy arguments often "merge into the

same or similar analysis."  *Sharp Farms v. Speaks*, 917 F.3d 276, 308 n.5 (4th Cir. 2019) (citing

*Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982)).  A named class representative must

therefore not only be common or typical of those in the class, but must also adequately represent

the interests of all in the class.  *See Deiter v. Microsoft Corp.*, 436 F.3d 461, 466 (4th Cir. 2006)

(citing *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 626 n.20 (1997)); *see Murdoch*, 2013 WL

1209144, at *6 (discussing how commonality and typicality serve as "guideposts" for determining

11

whether "the named plaintiff's claim and the class claims are so interrelated" as to protect the interests of the absent class members).

Plaintiffs state that because Plaintiffs and the Proposed Class all owned Bowl America Class A common stock, they are qualified to serve as class representatives.  Pl. Mem. at 11.  However, their motion is overly simplistic and fails to address the numerous issues and conflicts of interest between the three representatives and the Proposed Class.  These issues and conflicts prevent the Court from appointing them as class representatives.

    A.   <u>None of the Plaintiffs would be a common, typical, or adequate representative of the Proposed Class.</u>

As discussed above, the Proposed Class would be composed of non-Defendant shareholders, of which **68-84%** voted in favor of the transaction.  The Plaintiffs as proposed representatives stand in opposition to these shareholders, as Plaintiff Zucker and Risner voted against the merger, and Plaintiff Fine chose not to vote at all.  This clearly evidences a stark divergence in the interest and intent of the Plaintiffs from those of the significant majority of the Proposed Class that they seek to represent, precluding any finding of commonality, typicality, and the potential for consistent representation on this critical issue.  This uncontroverted fact definitively confirms the absence of the required characteristics that must be shared by the purported class representatives and the Proposed Class.

Depending on whether or not Ms. Macklin's shares are included, the total "no" vote was shared by 16-32% of stockholders.  Dragoo Decl. ¶¶ 9, 11.  That places each of the Plaintiffs squarely at odds with the majority of stockholders who were fully informed of all material information in the Proxy Statement and voted to approve the sale of the Company.  Indeed, this difference is magnified for Plaintiff Zucker, who owned over 40% of the shares that voted against

the transaction.  *See* Pl. Mem. at 6 (Zucker owned 279,596 of the 696,305 shares that voted against the transaction); Dragoo Decl. ¶ 7.

The disparity between the votes of the Plaintiffs and the majority of non-director shareholders means that none of the Plaintiffs are typical of the Proposed Class.  *See TBK Partners v. Chomeau*, 104 F.R.D. 127, 128–30 (E.D. Mo. 1985) (discussing how the "percentage of prospective class members who voted in favor of a merger is a factor to be considered in making the typicality determination.").  Several courts have held that "regardless of the relief sought, where there is a possibility that the other shareholders/class members would not want the transaction/merger voided," named plaintiffs who voted against the transaction are not adequate representatives.  *Birnberg v. Milk St. Residential Assocs., Ltd. P'ship*, 2003 WL 21995177, at *3 (N.D. Ill. Aug. 20, 2003); *see Brandriff v. Dataw Island Owners' Ass'n, Inc.*, No. CV 9:07-3361-CWH, 2010 WL 11534520 (D.S.C. Aug. 6, 2010) (acknowledging that courts often deny class certification when presented with evidence that class members voted in favor of the challenged policy or action); *cf. Alston v. Virginia High Sch. League, Inc.*, 184 F.R.D. 574, 579 (W.D. Va. 1999) (holding that class of all high school female athletes could not be certified, even if school's conduct was discriminatory, when some of proposed class members did not share the same goals or interests of the named plaintiffs, because those athletes were satisfied with or benefitted from the alleged conduct).

B.  <u>Plaintiff Zucker further fails as a common, typical, or adequate representative of the Proposed Class because of her affiliation with a competing bidder.</u>

13

Plaintiff Zucker,[9] who was affiliated with an entity that was involved in the sales process as a potential bidder, plainly holds a position and interest not typical or in common with the other Proposed Class members.  Indeed, Plaintiff Zucker's interests are directly antagonistic to those in the Proposed Class, making her an uncommon, atypical, and inadequate representative.

As is standard in any sales process, other parties besides Bowlero were interested in purchasing Bowl America.  Proxy at 13.  NIL Funding Corporation ("NIL"), referred to in the Proxy Statement as Party Y, expressed an initial interest in the Company but never made an offer.  Proxy at 13–14; TAC ¶ 78.   Plaintiff Zucker is affiliated with NIL, creating numerous different interests and conflicts from the typical shareholder that preclude her from serving as a class representative.  *See* TAC ¶ 78; *see also* Exhibit A (showing that NIL's ultimate parent company is Zucker's Article 6 Marital Trust).  For example, as a potential bidder, NIL and Plaintiff Zucker would presumably be motivated to acquire the company at the lowest available price to NIL, and not the highest price that all other shareholders would want.  Also, Plaintiffs contend that the termination fee discouraged other potential bidders from outbidding Bowlero, which again presumably included NIL.  *See* TAC ¶ 106.  NIL, however, presumably formed opinions about the value of Bowl America and chose not to outbid Bowlero during the sales process *before* the termination fee was accepted, or *after* the proposed transaction was announced, suggesting that it valued Bowl America as being worth less than Bowlero had offered.  This context raises significant and unique questions as to NIL and Plaintiff Zucker's analysis and evaluation of the company that are not shared by passive stockholders who did not participate in the process as potential purchasers.

---

[9] Ms. Zucker held Bowl America shares through two trusts.  TAC ¶¶ 6-8.

14

"The premise of a class action is that litigation by representative parties adjudicates the rights of all class members, so basic due process requires that named plaintiffs possess undivided loyalties to absent class members." *Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 338 (4th Cir. 1998). This undivided loyalty may be negated based upon "'the relative magnitude of plaintiff's personal interest as compared to [her] interest in the [class action] itself.'" *Robert Alan Ins. Agency v. Girard Bank*, 107 F.R.D. 271, 275 (E.D. Pa. 1985) (quoting *Davis v. Comed, Inc.*, 619 F.2d 588, 593–94 (6th Cir. 1980)).

This relationship with a potential bidder in the transaction destroys Plaintiff Zucker's undivided loyalty to the class in multiple ways. Unlike any other shareholder, Plaintiff Zucker's involvement with NIL allowed her to intimately participate in the sales process. Her ability to gain knowledge not available to other shareholders differentiates her from those shareholders and creates unique questions of law and fact relating not only to her decision to vote against the transaction, but also (a) her reasons for bidding on the Company originally, (b) her understanding of the valuation of the Company, and (c) her reasons for not continuing to engage in the transaction after learning of Bowlero's final bid proposal. *See Lienhart v. Dryvit Sys., Inc.*, 255 F.3d 138, 149 (4th Cir. 2001) (discussing how "individualized inquir[ies]" make it clear that "common issues do not predominate over individual issues."). Indeed, if Plaintiff Zucker believes that NIL could have purchased Bowl America at a price above Bowlero's offer but below what it believed to be the Company's value, even when taking into account the allegedly unreasonable termination fee (Plaintiffs now allege that the Company was worth over $80 million in early 2021, compared to

15

the $44 million transaction price, *see* Pl. Mem. at 3), that belief raises entirely separate questions of damages not consistent with the other shareholders.[10]

Furthermore, Plaintiff Zucker's distinct and identifiable interest in the merger as an interested bidder creates a personal animus and antagonism against the transaction with another bidder and the defendants themselves, further exposing her unique interests and making her ill-suited to serve as a class representative.  "[A]n unduly antagonistic litigant, or a litigant who bears a grudge against the defendant[s,] is not an appropriate class representative." *Kamerman v. Ockap Corp.*, 112 F.R.D. 195, 197 (S.D.N.Y. 1986); *see Neil v. Zell*, 275 F.R.D. 256, 262 (N.D. Ill. 2011) ("[A] proposed representative may be inadequate when motivated by personal animus.").  This personal animosity may "skew the litigation strategy" of the Proposed Class, especially with her status as Lead Plaintiff, negating her ability to show the class "undivided loyalty." *Parrish v. Nat'l Football League Players Ass'n*, No. C 07-00943 WHA, 2008 WL 1925208, at *9 (N.D. Cal. Apr. 29, 2008).

For all of these reasons, Plaintiff Zucker is not a common, typical, or adequate Plaintiff, and should not be appointed as a class representative.

C.  <u>Plaintiff Fine abstaining from voting on the transaction renders her an uncommon, atypical, and inadequate representative of the Proposed Class.</u>

Plaintiff Fine is also not common, typical, or an adequate representative of the Proposed Class.  Again, Plaintiff Fine abstained from voting on the merger transaction, triggering the acquiescence doctrine.  Joinder Stipulation (ECF No. 62) at 2; *see In re Best Lock Corp.*, 845 A.2d at 1077 n.82 (discussing how assent will be inferred where a stockholder, fully informed "of an

---

[10] It should go without saying that Defendants disagree with the suggestion that the Company was worth $80 million, and do not believe that Plaintiffs' claims have merit that would entitle any shareholder, including Zucker, to any damages.

intended invasion of his rights and an opportunity to dissent, stands by during the progress of a proceeding . . ."). Her acquiescence creates individualized issues that the Court must address, rendering class certification an inferior method for handling this dispute should Plaintiff Fine remain a class representative.

Furthermore, if the Proposed Class is narrowed to include only those who voted against the transaction, Plaintiff Fine would not even be a member of that class and should be precluded from serving as a representative. When given the opportunity to vote against the merger, the Narrowed Class members exercised their right to object and voted against the transaction. Plaintiff Fine instead, possessing all the material information needed to make an educated vote, acquiesced the transaction by choosing to cast an abstention vote. As a result of Fine's acquiescence, her course of conduct and interest is significantly different from those remaining in the Narrowed Class. In short, Plaintiff Fine's actions destroy any "sufficient relationship" between her and the "conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct." *Talley v. ARINC, Inc.*, 222 F.R.D. 260, 268 (D. Md. 2004) (Bennett, J.). Therefore, Plaintiff Fine is not common or typical of the class and cannot then serve as an adequate representative of their interests.

    D.  <u>As the Proposed Class is currently defined, Plaintiff Risner is not a common, typical, or adequate representative</u>.

Plaintiff Risner's vote against the merger makes him not typical of the class as it is currently defined. Again, the non-director shareholders cast over 3.5 million votes in favor of the transaction, constituting 68-84% of the Proposed Class members. By voting against the merger, Risner is therefore not typical of the Proposed Class *as defined*. *See Birnberg*, 2003 WL 21995177, at *3 (plaintiffs are not adequate representatives where "there is a possibility that the other shareholders/class members would not want the transaction/merger voided"); *Brandriff*, 2010 WL

11534520, at *12 (collecting cases acknowledging that "courts often deny class certification when presented with evidence that class members voted in favor of a challenged policy or action.").[11]

### III.   If the Class Is Narrowed, Plaintiffs Have Not Established that the Class Is So Numerous as to Make Joinder Impracticable

Under the "numerosity" requirement of Rule 23(a)(1), Plaintiffs have the burden to demonstrate that the class is "so numerous that joinder of all members is impracticable." *Brady v. Thurston Motor Lines*, 726 F.2d 136, 145 (4th Cir. 1984). Plaintiffs have not met that burden. If the class is narrowed to include only those shareholders that voted against the transaction, only 696,305 shares will be in the class. Lead Plaintiff Zucker owns 279,596 of those shares, comprising over 40% of the narrowed class. Pl. Mem. at 6. Plaintiffs' Motion does not provide the Court with sufficient information to conclude how many stockholders own the remaining 416,709 shares. *Cf. Ganesh, LLC v. Computer Learning Centers, Inc.*, 183 F.R.D. 487, 489 (E.D. Va. 1998) (agreeing to certify a class where 5.1 million shares were traded on the NASDAQ exchange and **"[n]othing in the record** cast doubt on whether a large number of investors were involved in purchasing shares in the company") (emphasis added). Indeed, if the remaining "no" stockholders each possessed just *one-tenth* of the number of shares held by Zucker (i.e., 28,000 shares apiece), that would be fewer than 15 stockholders. Conclusory or speculative allegations concerning the size of a prospective class do not satisfy the numerosity requirement. *See Stalling v. Califano*, 86 F.R.D. 140, 142 (N.D. Ill. 1980) (citing *Valentino v. Howlett*, 528 F.2d 975, 978 (7th Cir. 1976)). In looking objectively at the numbers, this lack of evidence combined with

---

[11] Defendants acknowledge that, if the Court certifies a class of only those shareholders who voted against the merger, Risner would appear to be typical of that narrowed class.

Plaintiff Zucker owning over 40% of the narrowed class's shares, Plaintiffs have not met their burden to establish numerosity.

## <u>CONCLUSION</u>

For all these reasons, the Defendants respectfully request that Plaintiffs' Motion for Class Certification be denied.  In the alternative, if the Court decides to certify a class, that class should be narrowed to include only those shareholders who voted against the transaction.  In that instance, Defendants would respectfully request that Plaintiffs Zucker and Fine be rejected as adequate representatives of that narrowed class.

## <u>REQUEST FOR HEARING</u>

Pursuant to Local Rule 105.6, Defendants respectfully request a hearing on Plaintiffs' Motion for Class Certification.

**[SIGNATURE BLOCK ON FOLLOWING PAGE]**

Dated: March 20, 2023

*/s/ Benjamin D. Schuman*
Benjamin D. Schuman (Bar No. 28829)
Meagan M. Pace (Bar No. 20765)
DLA Piper LLP (US)
6225 Smith Avenue
Baltimore, Maryland 21209
(410) 580-4208
ben.schuman@dlapiper.com
meagan.pace@dlapiper.com

Jarren N. Ginsburg (Bar No. 19688)
Foley & Lardner LLP
3000 K Street NW, Ste 600
Washington, DC 20007
(202) 672-5300
jginsburg@foley.com

John A. Tucker (admitted *pro hac vice*)
Foley & Lardner LLP
One Independent Drive, Suite 1300
Jacksonville, FL 32202-5017
(904) 359-2000
Primary Email: jtucker@foley.com
Secondary Email: avwilliams@foley.com

Jonathan H. Friedman (admitted *pro hac vice*)
Foley & Lardner LLP
90 Park Avenue
New York, NY 10016
(212) 682-7474
jfriedman@foley.com

*Counsel for Defendants*

## **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this 20th day of March, 2023, the foregoing motion and attachments were served by electronic filing on all counsel of record through the Court's electronic filing system.

*<u>/s/ Benjamin D. Schuman</u>*
Benjamin D. Schuman

21