IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| ANITA G. ZUCKER, TRUSTEE OF THE ANITA G. ZUCKER TRUST DATED APRIL 4, 2007, AS SUBSEQUENTLY AMENDED OR RESTATED, *et al.* <br><br> Plaintiffs, <br><br> v. <br><br> BOWL AMERICA, INC., *et al.* <br><br> Defendants. | Civil Case No. SAG-21-01967 |

**MEMORANDUM OPINION**

Lead Plaintiffs Anita G. Zucker, Trustee of the Anita G. Zucker Trust dated April 4, 2007, as Subsequently Amended or Restated, and Anita G. Zucker, Trustee of the Article 6 Marital Trust, Under the First Amended and Restated Jerry Zucker Revocable Trust dated April 2, 2007, (collectively, "The Trusts")[1] filed this putative class action against Bowl America, Inc. ("Bowl America" or "the Company"), Bowlero Corp. ("Bowlero"), Duff & Phelps Securities LLC, Cheryl Dragoo, Allan Sher, Merle Fabian, Gloria Bragg, Nancy Hull, and Ruth Macklin (collectively, "Defendants") alleging violations of state and federal law arising from Bowlero's acquisition of Bowl America (hereinafter referred to as "Merger"). ECF 25. Plaintiffs have filed a motion seeking class certification, the appointment of class representatives, and the appointment of class counsel ("Motion"). ECF 64. The issues have been fully briefed, ECF 65, 73, 78, and a hearing was held

---

[1] Two additional parties—Sheryl Cohen Fine and John Risner—later joined as named plaintiffs. This Court refers to the two Trusts and two individuals collectively as "Plaintiffs."

1

on June 2, 2023. After this Court's consideration of the entire record, Plaintiffs' Motion will be granted in part and denied in part, subject to later decertification if it becomes appropriate.

## I. BACKGROUND

The facts alleged in the Complaint have been summarized in this Court's prior opinions, which are incorporated by reference. With respect to the facts relevant to the instant motion, Plaintiffs' sole remaining claim is that Defendants acted in bad faith by approving the merger contract between Bowl America and Bowlero containing an excessive termination fee, effectively precluding another bidder from making a higher offer to purchase Bowl America. Plaintiffs seek to certify the following class:

> All holders of Bowl America Class A common stock who, as of May 27, 2021: (1) were entitled to vote on the Merger; and (2) continued to hold such stock until the closing of the Merger on August 18, 2021. The class excludes the Defendants, their family members, heirs, and any person, firm, trust, corporation, or other entity related to or affiliated with any of the Defendants.

ECF 65 at 5–6. Plaintiffs propose four class representatives: (1) Lead Plaintiff Anita G. Zucker, as trustee of the Anita G. Zucker Trust dated April 4, 2007, as subsequently amended or restated; (2) Lead Plaintiff Anita G. Zucker, as trustee of the Article 6 Marital Trust, under the first amended and restated Jerry Zucker Revocable Trust dated April 2, 2007; (3) Plaintiff Sheryl Cohen Fine; and (4) Plaintiff John Risner. *Id.* at 5. Plaintiffs have retained two firms, Cohen Milstein and KJK, as class counsel. *Id.*

## II. STANDARD OF REVIEW

The "class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700–01 (1979)). Class actions are subject to Federal Rule of Civil Procedure 23(a), which requires that (1) the alleged class is so numerous that

joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the representatives' claims are typical of the claims of the class, and (4) the representatives will fairly and adequately protect the interests of the class. The party seeking certification carries the burden of demonstrating that it has complied with Rule 23. *See EQT Prod. Co. v. Adair*, 764 F.3d 347, 357 (4th Cir. 2014). The four requirements of Rule 23(a)—numerosity, commonality, typicality, and adequate representation—limit the class claims to those fairly encompassed by the named plaintiff's claims. *See Dukes*, 564 U.S. at 349.

After satisfying the Rule 23(a) prerequisites, the plaintiff must show that the proposed class action satisfies one of the enumerated conditions in Rule 23(b). *E.g.*, *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 423 (4th Cir. 2003). Here, Plaintiffs seek class certification pursuant to Rule 23(b)(3). Under that rule, a class may be certified if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3).

Courts evaluating class certification "must rigorously apply the requirements of Rule 23." *Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 345 (4th Cir. 1998). Although the court's analysis must be "rigorous" and "may 'entail some overlap with the merits of the plaintiff's underlying claim,' Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Amgen Inc. v. Ct. Retirement Plans and Trust Funds*, 568 U.S. 455, 465–66 (2013) (citation omitted) (quoting *Dukes*, 564 U.S. at 351). The merits may be considered only to the extent that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied. *Id.* at 466.

### III. ANALYSIS

Plaintiffs have moved to certify the class under Rule 23(b)(3), in which "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members." FED. R. CIV. P. 23(b)(3). As a result, Rule 23(b)(3) class actions "must meet predominance and superiority requirements not imposed on other kinds of class actions." *Gunnells*, 348 F.3d at 424. Importantly, "[i]n a class action brought under Rule 23(b)(3), the 'commonality' requirement of Rule 23(a)(2) is 'subsumed under, or superseded by, the more stringent Rule 23(b)(3) requirement that questions common to the class predominate over other questions.'" *Lienhart v. Dryvit Sys., Inc.*, 255 F.3d 138, 146 n.4 (4th Cir. 2001) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 609 (1997)). Thus, the Court analyzes predominance and commonality together, and will begin with that inquiry before returning to the remaining requirements of Rule 23(a). *See, e.g.*, *Romeo v. Antero Resources Corp.*, No. 1:17CV88, 2020 WL 1430468, at *8 (N.D. W. Va. Mar. 23, 2020) ("[T]he Court will consider commonality in its discussion of predominance.").

#### A. Rule 23(b)(3)

#### 1. Predominance of Common Questions

To satisfy predominance, common questions must have significant "bearing on the central issue in the litigation." *EQT*, 764 F.3d at 366. In other words, the requirement is met where all class members' claims "depend upon a common contention," and establishing "its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350. Here, the essence of each proposed class member's claim against Defendants is that they suffered harm when Defendants approved the merger agreement with Bowlero containing an excessive termination fee, effectively precluding other prospective bidders from offering a more

4

competitive price. Thus, Plaintiffs claim the merger proceeded at an artificially depressed price, harming Bowl America's shareholders.

Whether the termination fee was excessive and, if so, whether the shareholders suffered any harm are common questions "at the heart of the litigation." *See EQT*, 764 F.3d at 366. As to the latter question, Plaintiffs will endeavor to prove that, absent the termination fee, there would have been a higher bid resulting in greater value to individual shareholders.

Defendants argue that despite these common questions, individual inquiries will predominate. Specifically, they contend that because most of the class members voted in favor of the merger with Bowlero, those class members will be barred by the acquiescence doctrine from any recovery. Without opining as to whether the acquiescence doctrine will eventually preclude those class members' claims, this Court agrees with Plaintiffs that such inquiry is premature. Acquiescence is a fact-based affirmative defense which is most appropriately reserved for a later stage of the litigation. Many of the relevant issues, including whether the class members had a meaningful choice in determining how to act or whether they acted voluntarily in a way demonstrating unambiguous approval of the merger, will benefit from factual exposition. Moreover, this Court can consider the common questions relating to whether any Plaintiff can prove damages caused by a breach of fiduciary duty before considering whether individual issues require the class to be decertified for consideration of which class members might be entitled to join in any recovery.

This litigation thus turns on common issues of law and fact. Therefore, Plaintiffs have satisfied the predominance requirement of Rule 23(b) and the related commonality requirement of Rule 23(a).

### 2. Superiority

In addition to finding that common questions predominate under Rule 23(b), the Court finds that the class action vehicle is "superior to other methods" of adjudicating this controversy. *See* FED. R. CIV. P. 23(b)(3). Based upon the common questions that predominate, as explained above, a class action to determine whether the termination fee caused any damages is more efficient than allowing a multitude of individual claims.

### B. Rule 23(a)

#### 1. Typicality and Adequacy

The typicality requirement in Rule 23 requires that "claims or defenses of representative parties are typical of the claims or defenses of the class." FED. R. CIV. P. 23(a)(3). This prerequisite "goes to the heart of a representative parties' [sic] ability to represent a class." *Deiter v. Microsoft Corp.*, 436 F.3d 461, 466 (4th Cir. 2006). For that reason, the "plaintiff's claim cannot be so different from the claims of absent class members that their claims will not be advanced by plaintiff's proof of his own individual claim." *Id.* at 466–67. The representative plaintiff's claims "need not be 'perfectly identical or perfectly aligned'" with other class members' claims, but "the representative's pursuit of his own interests 'must simultaneously tend to advance the interests of the absent class members.'" *Ealy v. Pinkerton Gov't Servs. Inc.*, 514 F. App'x 299, 305 (4th Cir. 2013) (unpublished) (quoting *Deiter*, 436 F.3d at 466). This analysis "tend[s] to merge" with the adequacy analysis. *See Broussard*, 155 F.3d at 337 (quoting *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982)). Plaintiffs must illustrate that they will "fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4).

Here, Plaintiffs' affirmative claim, that Defendants breached their fiduciary duty by agreeing to the Termination Fee, is entirely aligned with any such claim on the part of class

6

members. In terms of diligence, Plaintiffs have to date been actively involved in the case pursuing their own interests and those of the class. As discussed above, of course, there may be defenses available against certain members of the class that do not apply to Plaintiffs and may, at some point in the litigation, make them atypical or inadequate to represent those members' interests. Those defenses, however, logically should be assessed after discovery as to whether the termination fee was excessive and agreement to the excessive termination fee caused any damage to Plaintiffs and the class. If Plaintiffs are able to survive a dispositive motion on those issues, then the questions shift to which class members might be entitled to recovery or whether any affirmative defenses, including acquiescence, might apply to some class members' claims. Defendants will be free at that stage to seek decertification, arguing that these Plaintiffs cannot adequately represent the interests of class members who are not similarly situated and may be subject to the affirmative defense. *See Broussard*, 155 F.3d at 340 (explaining typicality exists where "as goes the claim of the named plaintiff, so go the claims of the class") (quoting *Sprague v. General Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1998)).

Defendants have raised a meritorious individual issue at this stage, however, regarding the typicality and adequacy of the Trusts as Lead Plaintiffs. The Trusts are each represented by Zucker as trustee. Zucker, and it appears one of her Trusts, are affiliated with NIL Funding Corporation ("NIL"), one of only four parties identified (by pseudonym) in the Complaint as having expressed interest in purchasing Bowl America. ECF 25 ¶¶ 78, 79, 72 n.2. To move forward with their claim, Plaintiffs will need to show that another interested party may have submitted an increased bid absent the allegedly excessive termination fee. Involvement or affiliation with one of the only other interested parties in the merger process therefore places Zucker and the Trusts in a position different from the other class members. For example, NIL's exploration of the opportunity to

purchase Bowl America at a favorable price potentially placed it in a position adverse to other class members in the transaction. NIL's role as a prospective competing bidder placed it in an antagonistic position vis-à-vis the prevailing bidder, Bowlero. And NIL's knowledge of facts relevant to the potential transaction as a potential bidder also places it and its ownership on different footing from the other Bowl America shareholders who only received information disseminated shareholder-wide. The Trusts, then, are not typical of the other shareholders who had no bidding interest in the transaction. They will not be appointed as class representatives.

Based upon this Court's rulings above, however, Plaintiffs Fine and Risner are not presently disqualified as atypical or inadequate representatives simply on the basis of the positions they took in the merger vote. They have participated fully in this litigation to date and there is no reason to deem them inadequate to be class representatives at this stage. Moreover, Defendants have not challenged the adequacy of class counsel, and the Court concludes that Plaintiffs' counsel are well-qualified to represent the entire proposed class.

### 2. Numerosity

As to the remaining factor, numerosity, Bowl America's common stock traded on the New York Stock Exchange, with more than three million shares outstanding. ECF 25 ¶¶ 8, 9. Though the precise number of individual shareholders cannot be established at present, this Court finds that there are sufficiently numerous proposed class members to warrant class certification. *See In re Under Armour Sec. Litig.*, Civ. No. 17-0388, 2022 WL 4545286 (D. Md. Sept. 29, 2022) (determining that a company traded on the New York Stock Exchange satisfied the numerosity requirement as to the number of shareholders).

### IV. CONCLUSION

For the reasons set forth above, Plaintiffs' Motion for Class Certification, Appointment of

Class Representatives, and Appointment of Class Counsel, ECF 64, is GRANTED IN PART AND DENIED IN PART, in that the class will be certified as requested with Sheryl Cohen Fine and John Risner as class representatives and Cohen Milstein Sellers & Toll PLLC and Kohrman Jackson & Krantz LLP as class counsel. A separate Order follows.

Dated: June 15, 2023                              /s/
                                           Stephanie A. Gallagher
                                           United States District Judge