# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| SHERYL COHEN FINE, *et al.,*<br><br>Individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>  v.<br><br>BOWL AMERICA, INC., *et al.,*<br><br>    Defendants. | Case No. 1:21-cv-01967-SAG<br><br>**REDACTED** |

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT

Benjamin D. Schuman (Bar No. 28829)
Meagan M. Pace (Bar No. 20765)
Alexa P. Ain (Bar No. 30563)
DLA PIPER LLP (US)
650 S. Exeter St., Suite 1100
Baltimore, Maryland 21202
(410) 580-3000
ben.schuman@dlapiper.com
meagan.pace@dlapiper.com
alexa.ain@dlapiper.com

Jarren N. Ginsburg (Bar No. 19688)
Foley & Lardner LLP
3000 K Street NW, Ste 600
Washington, DC 20007
(202) 672-5300
jginsburg@foley.com

John A. Tucker (admitted *pro hac vice*)
Foley & Lardner LLP
One Independent Drive, Suite 1300
Jacksonville, FL 32202-5017
(904) 359-2000
jtucker@foley.com

Jonathan H. Friedman (admitted *pro hac vice*)
Foley & Lardner LLP
90 Park Avenue
New York, NY 10016
(212) 682-7474
jfriedman@foley.com

*Counsel for Defendants*

## **TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................................1

ARGUMENT ........................................................................................................................2

   I.    THERE IS NO EVIDENCE OF DISHONESTY BY DEFENDANTS, ENTITLING
       THEM TO EXCULPATION UNDER THE COMPANY'S CHARTER........................2

      A.    The Maryland General Assembly Intended the Exculpation Statute to be
            Expansive and Plaintiffs' Attempt to Create Additional Exceptions Is Contrary
            to the Legislative Intent.........................................................................................4

      B.    Dishonesty Means Lying, and Plaintiffs' Cited Caselaw Does Not Expand That
            Definition or Section 5–418(a)'s Narrow Exceptions ..........................................5

      C.    There Is No Evidence of "Active and Deliberate Dishonesty" By Defendants In
            Approving the Termination Fee .............................................................................7

   II.    DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT BY REASON OF
       THE BUSINESS JUDGMENT RULE ....................................................................12

CONCLUSION....................................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Att'y Grievance Comm'n of Maryland v. Dore*,
433 Md. 685 (2013) ...........................................................................................5

*CDX Liquidating Tr. v. Venrock Assocs.*,
640 F.3d 209 (7th Cir. 2011) ............................................................................6

*In re Crimson Expl. Inc. Stockholder Litig.*,
2014 WL 5449419 (Del. Ch. Oct. 24, 2014) ..................................................14

*Davis v. Montgomery Cnty. Dep't of Transp.*,
2012 WL 748392 (D. Md. Mar. 6, 2012) (Motz, J.) ......................................14

*Fox v. Riverview Realty Partners*,
2013 WL 1966382 (N.D. Ill. May 10, 2013) .................................................6, 7

*Freight Drivers & Helpers Loc. U. No. 557 Pension Fund v. Penske Logistics, LLC*,
2013 WL 3895011 (D. Md. July 25, 2013) (Hollander, J.) .............................11

*Goldstein v. Berman*,
2014 WL 824050 (D. Md. Feb. 28, 2014) (Quarles, J.).................................5, 6

*Haley Paint Co. v. E.I. Dupont De Nemours & Co.*,
804 F. Supp. 2d 419 (D. Md. 2011) (Bennett, J.) ...................................13

*Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*,
790 F.3d 532 (4th Cir. 2015) ..........................................................................13

*Kapila v. Warburg Pincus, LLC, et al.*,
2024 WL 1382398 (M.D. Fla. Mar. 31, 2024) ..............................................14

*Lusk v. Life Time Fitness, Inc.*,
213 F. Supp. 3d 1119 (D. Minn. 2016)..........................................................6, 7

*Mann v. GTCR Golder Rauner, LLC*,
483 F. Supp. 2d 884 (D. Ariz. 2007) ..............................................................14

*Pierce v. Wash. Metro. Area Transit Auth.*,
2010 WL 4485826 (D. Md. Nov. 9, 2010) (Chasanow, J.) ............................13

*Reiner v. Ehrlich*,
212 Md. App. 142 (2013) ................................................................................15

*T-Mobile Ne. LLC v. Howard Cnty. Bd. of Appeals*,
   2012 WL 1123043 (D. Md. Mar. 30, 2012), *aff'd*, 524 F. App'x 9 (4th Cir.
   2013) ....................................................................................................................13

*Witchko v. Schorsch*,
   2016 WL 3887289 (S.D.N.Y. June 09, 2016) ...........................................................5

*Wittman v. Crooke*,
   120 Md. App. 369 (1998) ...................................................................................13, 15

**Statutes**

Del. Code Ann. Tit. 8, § 102.7(b) ........................................................................................4

Md. Code Ann., Cts. & Jud. Proc. § 5–418 ................................................................ *passim*

Md. Code Corps. & Ass'ns § 2–405.1 ....................................................................10, 12, 15

Md. Code Corps. & Ass'ns § 2–405.2 .................................................................................3

**Other Authorities**

James J. Hanks, Jr. & Larry P. Scriggins, *Let Stockholders Decide: The Origins of
   the Maryland Director and Officer Liability Statute of 1988*, 18 U. BALT. L.
   REV. 235 (1989) ...................................................................................................5

REPORT OF SUBCOMMITTEE ON DIRECTOR LIABILITY, MARYLAND STATE BAR
   ASSOCIATION, SECTION ON CORPORATION, BANKING, AND BUSINESS LAW,
   COMMITTEE ON CORPORATE LAWS (Nov. 16, 1987), *reprinted in* 18 U. BALT.
   L. REV. 235 (1989) (Appendix) ...........................................................................4

Defendants Cheryl A. Dragoo, Allan L. Sher,[1] Merle Fabian, Gloria M. Bragg, and Nancy E. Hull (the "Director Defendants" or "Defendants") respectfully submit this Reply in further support of their Cross-Motion for Summary Judgment ("Motion" or "Defs.' Mot.").

## INTRODUCTION

Defendants, as directors of a Maryland corporation, are entitled both to broad discretion and broad protections from liability for their corporate actions.  To prevent Monday-morning-quarterbacking of directors' decisions, the General Assembly and Maryland courts have established high barriers to overcome those broad protections.  To that end, Defendants seek summary judgment on two narrow questions of law that are ripe for decision: (a) whether Plaintiffs can circumvent Bowl America's exculpation clause with evidence of "active and deliberate dishonesty," and (b) whether Plaintiffs can establish "fraud, self-dealing, or unconscionable conduct" sufficient to rebut the statutory business judgment rule presumption that Defendants acted consistent with their fiduciary duties.  Plaintiffs' Opposition to Defendants' Cross-Motion for Summary Judgment (ECF No. 135) ("Plaintiffs' Opposition" or "Pls.' Opp.") establishes unequivocally that the answer to both questions is "no," and Defendants' Motion should be granted.

Maryland corporations may limit their directors' liability for virtually any act or omission – including gross negligence, intentional misconduct, bad faith, and violations of law – with only two narrowly construed exceptions: "active and deliberate dishonesty" and "improper benefit." The legislative history of the statute permitting such exculpation demonstrates that the General Assembly intended this protection to be broader than virtually any other State's.  Plaintiffs do not

---

[1] Mr. Sher died on June 26, 2022.  ECF No. 37.  As of the date of this motion, Plaintiffs have taken no action to dismiss the decedent or attempt to substitute any party for the decedent.  Mr. Sher is included in this memorandum for the sake of completeness pending resolution of his role in this action.

dispute that such an exculpation clause exists in this case.  Instead, Plaintiffs focus solely on the "active and deliberate dishonesty" exception.  But Plaintiffs fail to cite to any evidence in the record of lies, misrepresentations, material omissions, or other deceitful acts by Defendants to support the application of this exception, and certainly cite to no evidence that creates a genuine dispute of material fact that the Defendants acted with dishonesty.

Lacking such facts, Plaintiffs try to repurpose their breach of fiduciary duty claim into an argument that alleged "misconduct" is sufficient to show dishonesty.  However, Plaintiffs' attempt to conflate allegations of a breach of fiduciary duty with evidence of dishonesty contradicts Maryland's purposely narrow statutory exceptions, and if accepted, would nullify the purpose of exculpation.  As Maryland legislative history and case law make clear, dishonesty means dishonesty, and requires that Plaintiffs identify some purposely untrue or deceitful statement made by a Defendant to overcome exculpation.  Plaintiffs have not, and cannot, do so on this record.

Plaintiffs also fail to overcome the presumption of the business judgment rule, stating only that "the same facts that support denial of the Cross-Motion based on exculpation, support denial of the Cross-Motion."  Pls.' Opp. at 22.  Not only is this suggestion insufficient under the standard to overcome a motion for summary judgment, it is untrue.  Even with their mischaracterization of the factual record, Plaintiffs recount a narrative admitting that the Defendants conducted a thorough sales process, engaged in vigorous negotiations, and ultimately made what they believed was the best decision for Bowl America and its stockholders.

## **ARGUMENT**

## I.   **THERE IS NO EVIDENCE OF DISHONESTY BY DEFENDANTS, ENTITLING THEM TO EXCULPATION UNDER THE COMPANY'S CHARTER**

The record is devoid of any evidence that the Defendants engaged in "active and deliberate dishonesty," yet the Defendants' purported "dishonesty" is the focal point of Plaintiffs' Opposition.

The parties do not dispute that Maryland law allows stockholders to enact exculpation provisions in corporate charters that limit a director's liability unless they received an "improper benefit" or acted with "active and deliberate dishonesty."  Md. Code Ann., Cts. & Jud. Proc. § 5–418(a) ("Section 5–418(a)"); Md. Code Ann., Corps. & Ass'ns § 2–405.2.  The parties do not dispute that Bowl America had such an exculpation provision in its Charter that protected its directors "to the fullest extent that limitations on the liability of directors and officers are permitted by the Maryland General Corporation law[.]"  Ex. 53.  Further, Plaintiffs (rightfully) have not attempted to argue that Defendants received an "improper benefit," given that the Court previously dismissed all such allegations and discovery provided no support to revive them.  Plaintiffs' attempt to manufacture a dispute of material fact as to the "dishonesty" prong of Section 5–418(a) fails.

To be clear, Plaintiffs do not identify any lies, untruths, deceit, omissions, or any other indicators of dishonesty by any Defendant.  Instead, they rehash their breach of fiduciary duty argument via a mischaracterization of the facts, and attempt to reframe those allegations as an ***implication*** of dishonesty.  Plaintiffs repeatedly use equivocal language, arguing that Defendants' actions "suggest" dishonesty.  *See, e.g.*, Pls.' Opp. at 21 n.79 ("Plaintiffs have adduced evidence of ***a breach of fiduciary duty*** with the approval of the Termination Fee ***suggesting dishonesty*** on the part of the Board.") (emphasis added).  However, a breach of fiduciary duty – which the record also does not evidence – is not the same as "active and deliberate dishonesty" as defined and required by the Maryland statute.  Nor is a "suggestion" of dishonesty the same as the required "active and deliberate dishonesty."  Discovery is finished, the record is complete, and the Plaintiffs have had every opportunity to gather actual evidence of "active and deliberate dishonesty" to avoid the exculpation protection and have not done so.  Thus, the exculpation provision protects Defendants' actions.

A.     **The Maryland General Assembly Intended the Exculpation Statute to be Expansive and Plaintiffs' Attempt to Create Additional Exceptions is Contrary to the Legislative Intent**

Plaintiffs' contentions that Defendants' approval of the termination fee "by itself constitutes active and deliberate dishonesty" and that any breach of fiduciary duty automatically "suggest[s] dishonesty," Pls.' Opp. at 10–11, 21 n.79, are contrary to the clear and well-documented purpose of the narrow exceptions set forth in Section 5–418(a).  The ability of a Maryland corporation to limit the liability of its directors and officers is purposely broad, and the specific and narrow exceptions in Section 5–418(a) make the bar for avoiding exculpation in Maryland more difficult than in Delaware and perhaps anywhere else in the country.

The Maryland legislature was exceedingly clear and purposeful when it adopted Section 5–418(a).  The MSBA's Subcommittee on Director Liability ("Subcommittee"), which was tasked with creating the statute, considered Delaware's analog, Del. Code Ann. Tit. 8, § 102.7(b), which "specifically excepts breaches of the duty of loyalty, acts not in good faith, intentional misconduct and improper benefit" from the scope of what may be covered by exculpation provisions.  *See* Ex. 54, REPORT OF SUBCOMMITTEE ON DIRECTOR LIABILITY, MARYLAND STATE BAR ASSOCIATION, SECTION ON CORPORATION, BANKING, AND BUSINESS LAW, COMMITTEE ON CORPORATE LAWS (Nov. 16, 1987), *reprinted in* 18 U. BALT. L. REV. 235, 257, 260 (1989) (Appendix).  According to the Subcommittee, the Delaware statute's ambiguous language "[u]nfortunately" led to "questions" around "its exceptions which may restrict its efficacy in solving the problems it purports to address," a problem Maryland sought to avoid by narrowing the potential exceptions to exculpation to only "improper personal benefits and active and deliberate dishonesty."  *Id.*[2]

---

[2] The Subcommittee noted that "stockholders, if they so desire, could limit the liability of their directors and officers to some lesser standard, *e.g.*, gross negligence." *Id.* at 260.  However, as a reminder, Bowl America's Charter provided for exculpation of director actions "to the fullest extent that limitations of the liability of directors and officers are permitted by the Maryland General Corporation law," Ex. 53, and the stockholders never sought to alter that provision.

The Subcommittee articulated numerous reasons for narrowing the exceptions for exculpation to only two, intending to "add greater clarity and certainty to the law," "add to the perception of Maryland as a state with a favorable and responsive climate to business," "discourage directors and officers of existing Maryland-chartered publicly-held corporations from recommending reincorporation in other states," and "encourage directors of existing Maryland-chartered corporations to continue to serve [a]s directors." *Id.* at 263. For these reasons, Maryland passed a very broad version of the statute, which allows for "stockholders of a Maryland corporation [to] eliminate the liability of its directors and officers for a broad range of conduct – including not only simple and gross negligence, but also intentional misconduct, bad faith, unlawful distributions, and violations of law…," making it "***possibly the most expansive corporate liability limitation statute in the nation***." Ex. 54, James J. Hanks, Jr. & Larry P. Scriggins, *Let Stockholders Decide: The Origins of the Maryland Director and Officer Liability Statute of 1988*, 18 U. BALT. L. REV. 235, 247 (1989) (emphasis added).[3]

### B. Dishonesty Means Lying, and Plaintiffs' Cited Caselaw Does Not Expand That Definition or Section 5–418(a)'s Narrow Exceptions

Dishonesty "involves lying or the intent to commit fraud." *Witchko v. Schorsch*, 2016 WL 3887289, at *8 (S.D.N.Y. June 9, 2016) (dismissing claims under Maryland law and Section 5–418 for failure to plead active and deliberate dishonesty).[4] Consistent with that plain meaning, this Court has recognized that "allegations of breaches of fiduciary duties" or that the director defendants "did not act in the best interests" of a company does not equate to "active and deliberate dishonesty." *Goldstein v. Berman*, 2014 WL 824050, at *4 (D. Md. Feb. 28, 2014) (Quarles, J.).

---

[3] In fact, the Subcommittee had previously attempted to introduce a bill that was more similar to Delaware's statute, and it was overwhelmingly rejected. Ex. 54, Hanks at 242–43.

[4] *Witchko* cited the definition of "dishonesty" from *Att'y Grievance Comm'n of Maryland v. Dore*, 433 Md. 685, 697 (2013) (holding that where a statutory term is not defined, "[it is appropriate] to consult their dictionary definitions").

Plaintiffs cite to no case where an exculpation clause under Section 5–418(a) or a similar statute was avoided for any reason other than a deliberate lie.  Instead, Plaintiffs cite to *CDX Liquidating Tr. v. Venrock Assocs.*, 640 F.3d 209, 215 (7th Cir. 2011) for the proposition that "active and deliberate dishonesty" might also include "willful neglect of duties."  Pls.' Opp. at 20.  However, the Seventh Circuit in *CDX* noted that the parties "virtually ignored the issue" of whether evidence of a breach of the duty of disloyalty proves active and deliberate dishonesty and that it could not "find a case decided by a Maryland court that construes the term," and ultimately determined that it "needn't decide, because we think the Delaware statute controls…." *CDX*, 640 F.3d at 215–16.  Moreover, this Court in *Goldstein* addressed and rejected similar arguments based on *CDX*.  2014 WL 824050, at *3.

Plaintiffs also cite to *Fox v. Riverview Realty Partners*, 2013 WL 1966382, at *6–7 (N.D. Ill. May 10, 2013), which held that allegations of breach of fiduciary duty were sufficient to survive a ***motion to dismiss*** despite a Maryland exculpation provision.  Pls.' Opp. at 21.  That case involved defendants who allegedly failed to issue a promised common stock dividend to preferred shareholders as part of a scheme to marginalize them.  *Fox*, 2013 WL 1966382, at *7.  *Fox* involved allegations of deceit by the defendants, which is absent from this case.  Additionally, *Fox* was at the motion to dismiss stage, with the Court operating under a different standard, when all allegations are to be taken as true, as opposed to here on summary judgment when Plaintiffs must adduce actual evidence of "active and deliberate dishonesty."  *Id.* at *3.

Plaintiffs further cite to *Lusk v. Life Time Fitness, Inc.*, 213 F. Supp. 3d 1119, 1135 (D. Minn. 2016), suggesting that the court there was "considering a similar statute" and found that a fraud exception applied where a merger was carried out in violation of fiduciary duties.  Pls.' Opp. at 21.  *Lusk* has no bearing on this case.  It evaluated the application of a fraud exception to a

statutory remedy of appraisal for shareholders, ***not an exculpation clause*** (*Lusk*, 213 F. Supp. 3d at 1136); it was the District Court of Minnesota opining on a Minnesota statute (*id.* at 1135–36); and, like *Fox*, it was at the motion to dismiss stage where the court determined that it would "not consider the merits of [the plaintiffs'] breach of fiduciary duty claim except to find that it is not barred by the exclusive statutory appraisal remedy, and survives this motion to dismiss."  *Id.* at 1136.

Plaintiffs then cite to the Court's May 27, 2022 Memorandum Opinion to say that the "Director Defendants' apparent acceptance of the Company Termination Fee…[can] overcome the presumption that they acted with due care and good faith."  Pls.' Opp. at 11.  There, the Court was opining on the adequacy of the Plaintiffs' pleading of a ***breach of fiduciary duty claim*** at the ***motion to dismiss stage***, and not whether the record evidence demonstrates "active and deliberate dishonesty" as is the standard now for the summary judgment motion.  Memo Op. at 24–25.[5]

### C.    There Is No Evidence of "Active and Deliberate Dishonesty" By Defendants In Approving the Termination Fee

It is undisputed that Plaintiffs have failed to identify any factual statement by any Defendant that was even debatably untrue.  Indeed, where Plaintiffs previously alleged material misrepresentations or omissions in the Merger Proxy, the Court rejected those allegations when it dismissed Plaintiffs' Section 14(a) claims.  Memo Op. at 13–14.  The Court recognized that the Defendants conducted a transparent sale process, with adequate information provided to stockholders, following which the majority of the non-Defendant stockholders voted to approve the transaction.  *Id.*  The evidence in the record that the Plaintiffs argue "suggests" dishonesty does

---

[5] This Court did not address the exculpation defense until its Memorandum Order dated October 11, 2022 (ECF No. 52), where it noted that its decision then was only on the motion to dismiss where it had to accept the allegations as true, that the exculpation argument involved an affirmative defense, and that the Courts generally do not "'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses'" through a Rule 12(b)(6) motion." Oct. 11, 2022 Memo Op. at 6 (citations omitted).

no such thing.  At best, it only identifies Plaintiffs' disagreement with the decisions of the Defendants.  The Court does not have to decide whether the decisions made by Defendants were correct, or even whether they were reasonable, but only whether there is evidence that in making these decisions the Defendants acted with "active and deliberate dishonesty."  Again, Plaintiffs have not carried their burden to identify such evidence, nor is there any such evidence to identify.

Instead, Plaintiffs attempt to conflate what they argue were deficiencies in Defendants' negotiation of the deal with evidence of "active and deliberate dishonesty."  In doing so, they dismiss out-of-hand the affidavit of Bowl America's counsel, Gardner Davis of Foley & Lardner, LLP, and his first-hand account of the negotiations between the parties – particularly around the fixed dividend and termination fee – which demonstrates the robust give-and-take typical of any mergers & acquisitions transaction.  Pls.' Opp. at 17–18 n.71; ECF No. 130-2, ¶¶ 4–16 (Affidavit of Gardner Davis, "Davis Aff.").  Plaintiffs argue for the first time that Bowlero proposed a $0.79 per share dividend and that Defendants agreed to accept a $0.60 per share dividend instead with no exchange of consideration.  Pls.' Opp. at 14, 17.  Bowlero *never* offered a $0.79 per share dividend.  On May 16, 2021, Bowlero communicated to D&P that it *estimated* a $0.79 per share dividend but that



*Id.*  The ultimate dividend payment – which Bowl America was able to negotiate up from $0.57 per share to $0.60 per share

– was based on intricate mathematical calculations, Bowlero's risk appetite, and extensive negotiation.

Plaintiffs also mischaracterize the excerpt from the ABA Model Merger Agreement for the Acquisition of a Public Company shared with Bowl America during negotiations.  Pls.' Opp. at 7–10.  As discussed in Defendants' Motion, that document does not say that a termination fee over 6% "has been deemed by itself to be unreasonable," but that "the **Delaware** courts have **declined** to adopt a 'per se' rule of reasonableness" and are "to assess the reasonableness of such fees in particular circumstances."  Ex. 48 at 3824 (emphasis added); *see also* Defs.' Mot. at 24–25.[6]

Most importantly, and critical to the Court's summary judgment determination, is that ***even if Plaintiffs' characterization of the record evidence were true*** (and they are not), ***they are not evidence of "active and deliberate dishonesty*** ."  As Maryland corporation law expert James Hanks noted, Maryland allows corporations to limit directors' liability for a "broad range of conduct – including not only simple and gross negligence, but also intentional misconduct, bad faith, unlawful distributions, and violations of law." Ex. 54 at 247.  Even if Plaintiffs believe Defendants' actions to be wrong, they plainly were not acts of "active and deliberate dishonesty" and cannot preclude exculpation.

Plaintiffs' argument regarding certain Defendants signing of Voting and Support Agreements before reviewing the Merger Agreement or Termination Fee fares no better.  Pls.' Opp. at 15–16.  As the record reflects, Defendants were asked by counsel to sign these agreements before the meeting – which was held remotely via Zoom – for logistics reasons so that the signed

---

[6] Plaintiffs also argue that Defendants did not reach back out to all potential bidders before Bowl America signed a letter of exclusivity with Bowlero in January 2021. Pls.' Opp. at 12–13.  At that time, two bidders had active bids for the Company in January 2021 and Defendants reasonably agreed to exclusivity with the higher bidder.  Ex. 5, Proxy at 14; Ex. 1, Dragoo Tr., 141.   Nothing prevented any other buyer from coming forward with a topping bid. Regardless, this factual argument is solely about Monday-morning-quarterbacking the Defendants' decision, and wholly irrelevant to the critical question now before the Court of whether there is any evidence of "active and deliberate dishonesty."

agreements would be in counsel's hands for use *if the Board voted in favor of the Merger*.  Davis Aff., ¶ 22.  The efficacy of the Voting and Support Agreements were ***contingent*** upon the "Board of Directors of the Company [] unanimously approv[ing] the Merger Agreement and the transactions contemplated thereby."  Exs. 49–51; Defs.' Mot. at 26–27 n.11.  In other words, if the Merger were rejected, the Voting and Support Agreements would have been null and void.  This action demonstrates no "active and deliberate dishonesty."

Plaintiffs also argue that Defendants' view of the termination fee as "irrelevant" or "immaterial" and how that view factored into their decision to approve the Merger Agreement suggests misconduct.  Pls.' Opp. at 18.  Plaintiffs implicitly recognize the deficiency of this argument as they do not even attempt to label this action as "dishonesty," referring to it only as "misconduct."  *Id.*  As Plaintiffs concede, Defendants' weighing of factors, including the relative likelihood that a termination fee would ever be paid compared to the benefits of solidifying the acquisition, is not dishonesty at all, much less the "active and deliberate dishonesty" sufficient to overcome the protections of an exculpation provision.  Instead, it is evidence of Defendants' thoughtfulness and the exact type of conduct which Section 5–418(a) (and the Business Judgment Rule codified in Section 2–405.1(g)) was enacted to protect.

Finally, Plaintiffs make factual contentions that are not only divorced from any connection to dishonesty and the exculpation provision, but that have been dismissed for nearly two years, since the Court's May 27, 2022 Memorandum Opinion on Defendants' Motion to Dismiss.

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████████ The Court has dismissed claims relating to the value of the Company's real estate.  *See* Memo Op. at 22 (claims including Defendants' "undervaluing Company's real estate portfolio" do not "provide any basis from which this Court could infer a fiduciary breach").  Then, Plaintiffs argue that the purchase price was below the Company's stock trading price and that these facts "support[] denial of the Cross-Motion based on Defendants [*sic*] active and deliberate dishonesty."  Pls.' Opp. at 20.  Plaintiffs provide no explanation as to why these valuation differences demonstrate dishonesty as opposed to the natural interplay of the market as to thinly traded stocks.  Further, this Court dismissed all claims related to "an alleged failure to maximize the sale price of a Company."  Memo Op. at 19; *see also id.* n.9 ("[C]ourts have routinely rejected claims based on a board's acceptance of an offer below market trading price.") (collecting cases).

Stepping back, Plaintiffs' attempt to conflate alleged breaches of fiduciary duty with dishonesty must be rejected, because crediting Plaintiffs' expansion of the definition of dishonesty would render exculpation clauses and Section 5–418(a) meaningless.  The standard for defeating exculpation ***must*** be higher than the standard for proving a breach of fiduciary duty or there would be no point in having an exculpation clause.  And principles of statutory construction demand that Section 5–418(a) be strictly construed to further the intent of the Subcommittee and the General Assembly in drafting it.  *See Freight Drivers & Helpers Loc. U. No. 557 Pension Fund v. Penske*

11

*Logistics, LLC*, 2013 WL 3895011, at *8 (D. Md. July 25, 2013) (Hollander, J.) ("'[S]tatutes should receive a sensible construction, such as will effectuate the legislative intention, and, if possible, so as to avoid an unjust or an absurd conclusion.'") (quoting *Chesapeake Ranch Water Co. v. Bd. of Comm'rs of Calvert Cnty.*, 401 F.3d 274, 280 (4th Cir. 2005)).

In sum, Plaintiffs have presented no facts, and the record is equally lacking any facts, that Defendants acted with "active and deliberate dishonesty" to overcome the protections afforded to Defendants by the Charter's statutorily endorsed exculpation clause.  Defendants' Motion should be granted on this basis.

## II.   DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT BY REASON OF THE BUSINESS JUDGMENT RULE

The Plaintiffs propose, in conclusory fashion, that issues of fact exist as to whether Defendants engaged in "a level of culpable mismanagement and gross negligence…sufficient to rebut application of the business judgment rule."  Pls.' Opp. at 22.  Instead of citing to the record or identifying any facts which they believe rebut the presumption, Plaintiffs merely state that "the same facts that support denial of the Cross-Motion based on exculpation, support denial of the Cross-Motion."  *Id.*  The standards applicable to each statutory defense are not the same, and a vague reference to facts cited in another section is insufficient.

In Maryland, the standard of conduct applicable to directors of a corporation and the business judgment rule are codified by statute.  *See* Md. Code Corps. & Ass'ns § 2–405.1(c), (g).  Section 2–405.1 creates a presumption that an act of a director of a corporation was made "(1) [i]n good faith; (2) in a manner the director reasonably believes to be in the best interests of the corporation; and (3) [w]ith the care that an ordinarily prudent person in a like position would use under similar circumstances."  *Id.*  The Plaintiffs bear the burden of rebutting this presumption and must offer evidence that the Defendants engaged in "fraud, self-dealing or unconscionable

conduct" to survive a motion for summary judgment. *Wittman v. Crooke*, 120 Md. App. 369, 376 (1998) (quoting *Black v. Fox Hills N. Cmty. Ass'n, Inc.*, 90 Md. App. 75, 82 (1992)).

Plaintiffs have not identified evidence of "fraud, self-dealing, or unconscionable conduct," nor raised a genuine issue of material fact sufficient to overcome the business judgment rule presumption. "To create a genuine issue for trial, the nonmoving party must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence." *Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*, 790 F.3d 532, 540 (4th Cir. 2015) (internal quotation omitted) (affirming grant of summary judgment). Instead, the party opposing summary judgment "must proffer ***specific facts*** or objective evidence showing that a genuine issue of material fact exists." *T-Mobile Ne. LLC v. Howard Cnty. Bd. of Appeals*, 2012 WL 1123043, at *3 (D. Md. Mar. 30, 2012), *aff'd*, 524 F. App'x 9 (4th Cir. 2013) (emphasis added) (granting defendants' motion for summary judgment). Plaintiffs have not done so here, and instead merely referred to the facts cited in their exculpation clause argument for their business judgment rule argument. *See Pierce v. Wash. Metro. Area Transit Auth.*, 2010 WL 4485826, at *6 (D. Md. Nov. 9, 2010) (Chasanow, J.) (plaintiff did not provide any evidence for its summary judgment arguments and "[w]ithout evidence, the bare assertion is not enough to survive summary judgment.").

Moreover, the cases that Plaintiffs cite in their Opposition are inapposite. *See* Pls.' Opp. at 22. They all involved a court denying a motion to dismiss, not a motion for summary judgment. It goes without saying that these motions involve different standards and analyses. *See, e.g.*, *Haley Paint Co. v. E.I. Dupont De Nemours & Co.*, 804 F. Supp. 2d 419, 425 (D. Md. 2011) (Bennett, J.) ("[A] well-pleaded complaint may proceed [past a motion to dismiss] even if it strikes a savvy judge that actual proof of those facts is improbable [on summary judgment], and that a recovery is

very remote and unlikely"); *Davis v. Montgomery Cnty. Dep't of Transp.*, 2012 WL 748392, at *3 (D. Md. Mar. 6, 2012) (Motz, J.) ("The motion to dismiss standard generally tests the sufficiency of the pleadings alone, whereas summary judgment is a more appropriate standard of review once the facts have been elicited through the development of the record.").   To survive summary judgment, however, a plaintiff must overcome the business judgment rule presumption on the merits, which courts have acknowledged is a "near Herculean task."  *Mann v. GTCR Golder Rauner, LLC*, 483 F. Supp. 2d 884, 903 (D. Ariz. 2007) (quoting *In re Tower Air, Inc.*, 416 F.3d 229, 238 (3d Cir. 2005)) (granting summary judgment to defendants as a matter of law where plaintiffs failed to meet their burden of rebutting the business judgment rule); *Kapila v. Warburg Pincus, LLC, et al.*, 2024 WL 1382398, at *13 (M.D. Fla. Mar. 31, 2024) (holding that "[p]laintiff fail[ed] to carry his burden of rebutting the presumption…and thus the business judgment rule applie[d]…."); *In re Crimson Expl. Inc. Stockholder Litig.*, 2014 WL 5449419, at *9 (Del. Ch. Oct. 24, 2014)) ("Practically, the business judgment rule means that litigants challenging a board's decision face an uphill battle.").

The Plaintiffs have not (and cannot) come close to identifying record evidence or case law which supports a finding that the business judgment rule does not apply to the Defendants' conduct. The parties engaged in extensive discovery, with thousands of pages of documents produced and depositions of every Defendant.  Even after this lengthy process, the Plaintiffs cannot point to any record evidence to dispute that the Defendants engaged in a reasonable and thorough sale process, kept themselves informed, and reasonably relied on their advisors, much less that the Defendants committed fraudulent or unconscionable acts.  The full record shows that this sales process went on for nearly two years, and occurred primarily during the beginning of COVID-19, a time filled with uncertainty and turmoil.  Faced with this, Defendants rationally accepted the offer they had

in hand — a $44 million, all cash, no contingencies offer from Bowlero.  *See, e.g.*, Ex. 5, Proxy (recounting the transaction and negotiation process); Ex. 39 (December 2020 Meeting Minutes detailing Board's discussion of possibilities in the face of COVID-19); Ex. 42 (March 23, 2021 Meeting Minutes detailing "thorough" discussion of "various potential alternatives to a transaction" before determining that "the proposed Bowlero merger appeared to be the best option for maximizing value for all shareholders."); Ex. 44 (May 27, 2021 Meeting Minutes where Board considered the Merger terms, specifically the termination fee and expense reimbursement, and eventually approved the Merger Agreement).  Nonetheless, this Court need not decide that the Defendants' conduct was correct.  Instead, it must only decide whether Plaintiffs presented a genuine dispute of material fact as to whether Defendants engaged in "fraud, self-dealing or unconscionable conduct" when agreeing to the termination fee to rebut the business judgment rule presumption.  *Wittman*, 120 Md. App. at 376 (quoting *Black*, 90 Md. App. at 82); *Reiner v. Ehrlich*, 212 Md. App. 142, 155–56 (2013) ("Absent fraud or bad faith, the decision…was a business judgment with which a court will not interfere.  The business judgment rule, therefore, precludes judicial review of a legitimate business decision of an organization, absent fraud or bad faith.") (internal citations omitted).  Plaintiffs have not come close to doing so here.

Therefore, as the Plaintiffs have not (and cannot) point to evidence to rebut the business judgment rule, Defendants must be presumed to have met their fiduciary duties under Section 2–405.1(c) and (g), and their Motion should be granted.

## **CONCLUSION**

For all these reasons, Defendants respectfully request that the Court grant their Motion for Summary Judgment and deny Plaintiffs' Motion for Summary Judgment in its entirety.

**[SIGNATURE BLOCK ON FOLLOWING PAGE]**

Dated: April 18, 2024

Respectfully submitted,

<table>
<tr><td><u>/s/ John A. Tucker (with permission)</u></td><td><u>/s/ Benjamin D. Schuman</u></td></tr>
<tr><td>John A. Tucker (admitted <em>pro hac vice</em>)</td><td>Benjamin D. Schuman (Bar No. 28829)</td></tr>
<tr><td>Foley & Lardner LLP</td><td>Meagan M. Pace (Bar No. 20765)</td></tr>
<tr><td>One Independent Drive, Suite 1300</td><td>Alexa P. Ain (Bar No. 30563)</td></tr>
<tr><td>Jacksonville, FL 32202-5017</td><td>DLA Piper LLP (US)</td></tr>
<tr><td>(904) 359-2000</td><td>650 S. Exeter St., Suite 1100</td></tr>
<tr><td>Primary Email: jtucker@foley.com</td><td>Baltimore, Maryland 21202</td></tr>
<tr><td>Secondary Email: avwilliams@foley.com</td><td>(410) 580-3000</td></tr>
<tr><td></td><td>ben.schuman@us.dlapiper.com</td></tr>
<tr><td>Jarren N. Ginsburg (Bar No. 19688)</td><td>meagan.pace@us.dlapiper.com</td></tr>
<tr><td>Foley & Lardner LLP</td><td>alexa.ain@us.dlapiper.com</td></tr>
<tr><td>3000 K Street NW, Ste 600</td><td></td></tr>
<tr><td>Washington, DC 20007</td><td></td></tr>
<tr><td>(202) 672-5300</td><td></td></tr>
<tr><td>jginsburg@foley.com</td><td></td></tr>
</table>

John A. Tucker (admitted *pro hac vice*)
Foley & Lardner LLP
One Independent Drive, Suite 1300
Jacksonville, FL 32202-5017
(904) 359-2000
Primary Email: jtucker@foley.com
Secondary Email: avwilliams@foley.com

Jonathan H. Friedman (admitted *pro hac vice*)
Foley & Lardner LLP
90 Park Avenue
New York, NY 10016
(212) 338-3416
jfriedman@foley.com

*Counsel for Defendants*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this 18th day of April, 2024, the foregoing response and attachments were served by electronic mail on all counsel of record.

<u>*/s/ Benjamin D. Schuman*</u>
Benjamin D. Schuman