UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
NORTHERN DIVISION

| | |
|---|---|
| SHERYL COHEN FINE, *et al.*, | Case No. 1:21-cv-01967-SAG |
| Individually and on behalf of all others similarly situated, | |
| Plaintiffs, | |
| v. | |
| BOWL AMERICA, INC., *et al.*, | |
| Defendants. | |

**LEAD PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND
<u>APPROVAL OF PLAN OF ALLOCATION</u>**

# TABLE OF CONTENTS

<b>Page</b>

PRELIMINARY STATEMENT ............................................................................................. 1

ARGUMENT ..................................................................................................................... 4

    A.   The Law Favors and Encourages Settlement of Class Action Litigation ....................... 4

    B.   The Standards for Final Approval ..................................................................... 4

    C.   Application of Rule 23(e)(2) and *Jiffy Lube* Factors ......................................... 6

        1. Plaintiffs and Co-Lead Counsel Have Adequately Represented the Settlement Class ... 6

        2. The Settlement Is the Product of Good Faith, Informed, and Arm's-Length Negotiations by Experienced Counsel ....................................................... 7

        3. The Relief Provided by the Settlement Is Adequate ..................................... 10

            (a) Risks of Establishing Liability and Damages Support Approval of the Settlement .................................................................................. 11

            (b) The Settlement Is Reasonable In Light of the Potential Recovery ...................... 13

            (c) Costs and Delay of Continued Litigation Support Approval of the Settlement .... 14

            (d) The Effective Process for Distributing Relief to the Settlement Class ................. 14

        4. Class Members Are Treated Equitably Relative to One Another ................................. 15

        5. Reaction of the Class to Date Supports Approval of the Settlement ........................... 15

CONCLUSION ................................................................................................................ 19

# TABLE OF AUTHORITIES

**Page(s)**

Cases

*1988 Tr. for Allen Child. Dated 8/8/88 v. Banner Life Ins. Co.*,
   28 F.4th 513 (4th Cir. 2022) ............................................................................... 4, 5

*Boger v. Citrix Sys., Inc.*,
   2023 WL 1415625 (D. Md. Jan. 31, 2023) ............................................................. *passim*

*Boyd v. Coventry Health Care Inc.*,
   299 F.R.D. 451 (D. Md. 2014) ............................................................................... 17

*Feinberg v. T. Rowe Price Grp., Inc.*,
   610 F. Supp. 3d 758 (D. Md. 2022) ............................................................. 10, 12, 16, 17

*Flinn v. FMC Corp.*,
   528 F.2d 1169 (4th Cir. 1975) ............................................................................... 15

*George v. Duke Energy Ret. Cash Balance Plan*,
   259 F.R.D. 225 (D.S.C. 2009) ............................................................................... 6

*Graham v. Famous Dave's of Am., Inc.*,
   2022 WL 17584274 (D. Md. Dec. 12, 2022) ......................................................... 8

*Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
   855 F. Supp. 825 (E.D.N.C. 1994) ....................................................................... 13

*Hunt v. Constantine Com. Constr., Inc.*,
   2023 WL 5003137 (D. Md. Aug. 4, 2023) ........................................................... 8

*In re Jiffy Lube Sec. Litig.*,
   927 F.2d 155 (4th Cir. 1991) ............................................................................... *passim*

*Lomascolo v. Parsons Brinckerhoff, Inc.*,
   2009 WL 3094955 (E.D. Va. Sept. 28, 2009) ....................................................... 4, 8

*In re Lumber Liquidators Chinese-Manufactured Flooring Prods. Mktg., Sales Practices & Prods.*
   *Liab. Litig.*,
   952 F.3d 471 (4th Cir. 2020) ............................................................................... 6, 7

*McAdams v. Robinson*,
   26 F.4th 149 (4th Cir. 2022) ............................................................................... 18

*In re MicroStrategy, Inc. Sec. Litig.*,
   148 F. Supp. 2d 654 (E.D. Va. 2001) ................................................................... 12

*In re MicroStrategy, Inc. Sec. Litig.*,
   150 F. Supp. 2d 896 (E.D. Va. 2001) ................................................................... 3

*Miller v. Asensio & Co., Inc.*,
   364 F.3d 223 (4th Cir. 2004) ............................................................................... 12

*Mullane v. Cent. Hanover Bank & Trust Co.*,
   339 U.S. 306 (1950) ................................................................................................ 18

*National Rural Tele. Coop. v. DIRECTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004) .......................................................................... 13

*of India Globalization Cap., Inc. v. MuKunda*,
   2020 WL 3639978 (D. Md. July 6, 2020) . Pursuant to the Preliminary Approval Order, the
   Court-appointed Settlement Administrator, Epiq ................................................. 16

*Orman v. Am. Online, Inc.*,
   1998 WL 1969646 (E.D. Va. Dec. 14, 1998) ....................................................... 13

*Robbins v. Koger Props., Inc.*,
   116 F.3d 1441 (11th Cir. 1997) ............................................................................ 12

*Robinson v. Nationstar Mortg. LLC*,
   2020 WL13119703 (D. Md. Aug. 19, 2020) ....................................................... 14

*Sharp Farms v. Speaks*,
   917 F.3d 276 (4th Cir. 2019) ................................................................................ 10

*Smith v. David's Loft Clinical Programs, Inc.*,
   2022 WL 16553228 (D. Md. Oct. 31, 2022) .......................................................... 9

*Stuckey v. Geupel*,
   854 F.2d 1317 (4th Cir. 1988) .............................................................................. 12

*Taylor v. First Union Corp. of South Carolina*,
   857 F.2d 240 (4th Cir. 1988) ................................................................................ 12

*In re The Mills Corp. Sec. Litig.*,
   265 F.R.D. 246 (E.D. Va. 2009) ........................................................................... 16

*Yost v. Elon Prop. Mgmt. Co.-Lexford Pools 1/3, LLC*,
   2023 WL 185178 (D. Md. Jan. 13, 2023) ........................................................... 6, 7

## OTHER AUTHORITIES

Laarni T. Bulan and Laura E. Simmons, *Securities Class Action Settlements – 2023 Review and
   Analysis* (Cornerstone Research 2024) ................................................................ 13

Rule 23(e) of the Federal Rules of Civil Procedure ..........................................................passim

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Plaintiffs and Class Representatives Sheryl Cohen Fine and John Risner,[1] on behalf of themselves and all other members of the Class, respectfully submit this memorandum of law in support of their motion for final approval of the proposed Settlement of the above-captioned class action (the "Action") and approval of the proposed plan of allocation for the proceeds of the Settlement (the "Plan of Allocation").

## PRELIMINARY STATEMENT

Plaintiffs and Defendants[2] have agreed to a settlement of the claims in the Action, and the release of all claims, in exchange for a payment of $2,175,000 in cash. The terms of the Settlement are set forth in the Stipulation, which was previously filed with the Court. *See* ECF No. 154-3.

As detailed in the accompanying Joint Declaration of Richard A. Speirs and Brett S. Krantz in Support of (i) Plaintiffs' Motion for Final Approval of Class Action Settlement and Plan of Allocation; and (ii) Co-Lead Counsel's Motion for an Award of Attorneys' Fees and Payment of Expenses ("Joint Declaration"),[3] before agreeing to settle, Plaintiffs, through Co- Lead Counsel: (i) conducted a comprehensive investigation into the allegedly wrongful acts, by, among other efforts, a review and analysis of Bowl America filings with the SEC, a review and analysis of publicly

---

[1] All capitalized terms used and not otherwise defined in this Memorandum have the meanings given to them in the Stipulation and Agreement of Settlement, dated August 27, 2024 (the "Stipulation"). *See* ECF No. 154-3.

[2] Defendants are Cheryl Dragoo, Allan Sher, Merle Fabian, Gloria Bragg, and Nancy Hull (collectively, the "Board of Directors" or "Director Defendants").

[3] The Joint Declaration is an integral part of this submission and, for the sake of brevity in this memorandum, the Court is respectfully referred to it for, among other things, a detailed description of, *inter alia*: the history of the Action; the nature of the claims asserted; the negotiations leading to the Settlement; and the risks and uncertainties of continued litigation. Citations to "¶" in this memorandum refer to paragraphs in the Joint Declaration. All exhibits referenced below are attached to the Joint Declaration. For clarity, citations to exhibits that themselves have attached exhibits will be referenced as "Ex. _ - _." The first numerical reference "1" is to the designation of the entire exhibit attached to the Joint Declaration and the second reference is to the exhibit designation within the exhibit itself.

available documents and analyst reports; (ii) prepared and filed an initial and amended complaints; (iii) fully briefed Defendants' multiple motions to dismiss; (iv) conducted extensive discovery that included serving document requests and analyzing documents produced by Defendants and non-parties; (v) fully briefed and argued Plaintiffs' motion for class certification; (vi) prepared expert reports addressing termination fees, valuation and damages; (vii) engaged in a full discovery program that included reviewing and producing Plaintiffs' documents; (viii) defended two class plaintiff depositions; (ix) deposed multiple witnesses, which included defending the deposition of Plaintiffs' expert, and deposing Defendants' experts; (x) filed a motion to compel production of privileged documents; and (xi) fully briefed motions for and contra summary judgment. In consultation with its damages' expert, Co-Lead Counsel evaluated the potential damages in the case and negotiated in mediation sessions to secure the $2.175 million recovery. *See generally*, ¶¶16-50.

The Settlement is the product of extensive arm's-length negotiations between the Parties, which included a mediation session under the auspices of Judge Adam B. Abelson (formerly Magistrate Judge Abelson). ¶¶45-47. Following the June 6, 2024 mediation session, and after further discussions among the Parties and with Judge Abelson after the mediation, Judge Abelson made a mediator's proposal to settle the Action. Both sides accepted the proposal and agreed to the Settlement. ¶47.

The Settlement is a very favorable result for the Class in light of the risks of continued litigation. While Plaintiffs and Co-Lead Counsel believe that the claims asserted against Defendants are strong, they recognize that the Action presented a number of obstacles, including ongoing risks associated with the pending motions for summary judgment, Defendants' intention to revisit class certification, *in limine* motions seeking to limit damages or exclude evidence, trial, and likely appeals, which would extend the litigation for years and might lead to a smaller recovery or no recovery at all. The Court's modification of its class certification decision or granting of

summary judgment in Defendants' favor potentially could have resulted in little or no recovery for the Class. Plaintiffs also faced substantial risks associated with Defendants substantial statutory defenses of exculpation and the business judgment rule under Maryland law. *Id.* at ¶¶51-62.

Under Fed. R. Civ. P. 23(e), a class action settlement should be approved if the Court finds it "fair, reasonable, and adequate." *See In re MicroStrategy, Inc. Sec. Litig.*, 150 F. Supp. 2d 896, 903-04 (E.D. Va. 2001) ("Simply put, the Court must assess whether the settlement here is both fair and adequate under the circumstances."). In light of the substantial recovery for the Class and the risks to continued litigation, as discussed below and in the Joint Declaration, Plaintiffs respectfully submit that the Settlement meets these standards and warrants final approval by the Court.

As detailed in the accompanying declaration of the Settlement Administrator ("Mahan Decl.") the Court-approved Notice was sent to over 1,711 potential Class Members and their nominees beginning on September 10, 2024. To date there have been no objections[4] filed regarding any aspect of the Settlement and no requests for exclusion.[5] Given this positive response by the Class, and the merits of the result achieved in the face of numerous obstacles to recovery, Plaintiffs request that the Court approve the Settlement and the Plan of Allocation.

Additionally, Plaintiffs request that the Court approve the proposed Plan of Allocation governing the distribution of the Net Settlement Fund, which was set forth in full in the long-form Notice posted on the settlement website www.BowlAmericaSecuritiesLitigation.com. ( "Settlement Website"). *See* Ex. 1-C ¶¶ 53-54. The Plan of Allocation provides a reasonable and equitable method for allocating the Net Settlement Fund among Class Members and thus should likewise be approved.

---

[4] One class member wrote to the Court concerning a possible objection but Co-Lead Counsel sent the Notice in response to that inquiry detailing the procedures for objecting, but no objection has been filed to date. *See* Joint Decl. ¶ 78, n. 5; Ex. 1-D.

[5] *See* Ex. 1-A, Mahan Decl. at ¶ 18.

## ARGUMENT

**I.    THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE, AND WARRANTS FINAL APPROVAL**

### A.    The Law Favors and Encourages Settlement of Class Action Litigation

Rule 23(e) of the Federal Rules of Civil Procedure provides that a class action settlement must be presented to the Court for approval and should be approved when the Court finds it "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *1988 Tr. for Allen Child. Dated 8/8/88 v. Banner Life Ins. Co.*, 28 F.4th 513, 525 (4th Cir. 2022). Courts have long recognized that public and judicial policy favor the settlement of disputed claims among private litigants, particularly in class actions. *See, e.g.*, *Boger v. Citrix Sys., Inc.*, 2023 WL 1415625, at *3 (D. Md. Jan. 31, 2023) ("There is an overriding public interest in favor of settlement, particularly in class action suits.") (quoting *Lomascolo v. Parsons Brinckerhoff, Inc.*, 2009 WL 3094955, at *10 (E.D. Va. Sept. 28, 2009)).[6]

### B.    The Standards for Final Approval

Pursuant to Rule 23(e)(2), a court may approve a settlement as "fair, reasonable, and adequate" after considering the following four factors:

(A)    class representatives and counsel have adequately represented the class;

(B)    the proposal was negotiated at arm's length;

(C)    the relief provided for the class is adequate, taking into account:

- the costs, risks, and delay of trial and appeal;

- the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

- the terms of any proposed award of attorney's fees, including timing of payment; and

---

[6] Internal quotation marks and citations within quotations are omitted throughout unless otherwise specified.

(D)    any agreement required to be identified under Rule 23(e)(3)[7]; and the proposal treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2).  The Settlement meets all the requisite criteria for approval.

Historically, the Fourth Circuit has held that district courts should consider the factors set forth in *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158 (4th Cir. 1991) when evaluating a class action settlement.  *See*, *e.g.*, *1988 Tr.*, 28 F.4th at 525; *Boger*, 2023 WL 1415625, at *3. The *Jiffy Lube* factors are consistent with the Rule 23(e)(2) factors.  Under *Jiffy Lube*, to assess the threshold factor of the fairness of a settlement, courts consider, "(1) the posture of the case at the time settlement was proposed, (2) the extent of discovery that had been conducted, (3) the circumstances surrounding the negotiations, and (4) the experience of counsel in the [relevant] area of . . . class action litigation." *Jiffy Lube,* 927 F.2d at 159.  Analyzing these factors enables the Court to determine that "the settlement was reached as a result of good faith bargaining at arm's length, without collusion." *Id.*

The second *Jiffy Lube* factor articulates several additional considerations that the court should address: (1) the relative strength of the plaintiff's case on the merits; (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial; (3) the expected duration and expense of additional litigation; (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment; and (5) the degree of opposition to the settlement.  927 F.2d at 159.

As noted in the Advisory Committee Notes to the 2018 amendments to the Federal Rules of Civil Procedure, the factors set forth in Rule 23(e)(2) are not intended to "displace" any factor previously adopted by the court of appeals, but "rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the

---

[7] This factor does not apply to the Settlement as there are no such agreements.

proposal." Fed. R. Civ. P. 23 (e)(2) Advisory Committee Notes to 2018 Amendments.   Plaintiffs will primarily discuss the fairness, reasonableness, and adequacy of the Settlement in relation to the four factors set forth in Rule 23(e)(2), since these factors "almost completely overlap" with the *Jiffy Lube* factors and "the outcome[s] [are] the same under both" sets of factors. *Yost v. Elon Prop. Mgmt. Co.-Lexford Pools 1/3, LLC*, 2023 WL 185178, at *4 (D. Md. Jan. 13, 2023) (quoting *In re Lumber Liquidators Chinese-Manufactured Flooring Prods. Mktg., Sales Practices & Prods. Liab. Litig.*, 952 F.3d 471, 484 (4th Cir. 2020)).  In short, each of the Rule 23(e)(2) and *Jiffy Lube* factors readily support approval of the proposed Settlement.

### C.    Application of Rule 23(e)(2) and *Jiffy Lube* Factors

### 1.    Plaintiffs and Co-Lead Counsel Have Adequately Represented the Settlement Class

In determining whether to approve a class action settlement, the Court should consider whether "the class representative and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A).  The adequacy requirement "involves two inquiries: 1) whether the plaintiff has any interest antagonistic to the rest of the class; and 2) whether plaintiff's counsel is qualified, experienced and generally able to conduct the proposed litigation." *Yost*, 2023 WL 185178 at *7 (quoting *George v. Duke Energy Ret. Cash Balance Plan*, 259 F.R.D. 225, 232 (D.S.C. 2009)).

Throughout the Action, Plaintiffs and Co-Lead Counsel have zealously represented the Class in both their vigorous prosecution of the Action and in their negotiation and achievement of the Settlement.  Plaintiffs have been active and informed participants in the litigation efforts and were consulted on, and approved, the terms of the Settlement. *See generally, e.g.*, Joint Decl. Exs. 1-G, 1-H. Co-Lead Counsel developed a deep understanding of the facts of the case and merits of the claims through vigorous representation of Plaintiffs and the Class which included: (i) conducting a comprehensive investigation into the allegedly wrongful acts, which included, among other things, a review and analysis of Bowl America filings with the SEC, a review of news articles, analyst reports and other publicly available documents; (ii) briefing complex legal issues raised

in motions to dismiss filed by multiple Defendants; (iii) extensive discovery efforts that included serving document requests and analyzing the production of documents from Defendants and non-parties; (iv) reviewing and producing documents from Plaintiffs and Class Representatives; (v) briefing and arguing Plaintiffs' motion for class certification; (vi) preparing expert reports addressing issues of termination fees, valuation and damages; (vii) completing a full discovery program including defending two plaintiffs depositions, defending the deposition of Plaintiffs' expert, and deposing six fact and two expert witnesses; (viii) briefing a motion to compel the production of privileged documents; and (ix) briefing motions for summary judgment.  In consultation with their damages expert, Co-Lead Counsel also evaluated the potential damages in the case and went through a rigorous mediation process before securing the $2,175,000 recovery.  It cannot be disputed that Plaintiffs and Co- Lead Counsel have adequately represented the Class.

### 2.    The Settlement Is the Product of Good Faith, Informed, and Arm's-Length Negotiations by Experienced Counsel

In weighing a class action settlement at final approval, the Court must consider whether the settlement "was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B).  To determine whether the settlement was fairly negotiated, the Court also evaluates the four *Jiffy Lube* "fairness" factors: "(1) the posture of the case at the time settlement was proposed; (2) the extent of discovery that had been conducted; (3) the circumstances surrounding the negotiations; and (4) the experience of counsel in the area of [the] class action litigation."   *Yost*, 2023 WL 185178 at *4 (citing *In re Lumber Liquidators* 952 F.3d at 484; *Jiffy Lube*, 927 F.2d at 159).  These factors demonstrate that the Settlement was reached through arm's-length negotiations amid thorough litigation efforts and with no hint of collusion.

In particular, the significant amount of discovery that was conducted before the Parties' agreement in principle dispels any concerns of possible collusion. *See Jiffy Lube*, 927 F.2d at 159 (acknowledging that a settlement reached, unlike here, "at a very early stage in the litigation and

prior to any formal discovery, rais[es] questions of possible collusion"). Here, as detailed in the Joint Declaration, the Settlement was reached only after fully completing both fact and expert discovery and briefing summary judgment motions. *See* ¶¶27-44.

Plaintiffs' robust discovery efforts included Defendants' production of documents which were reviewed and analyzed by Plaintiffs, and Plaintiffs' review and production of documents to Defendants. Plaintiffs prepared written discovery (document requests and requests to admit) and served subpoenas in connection with the Action which resulted in additional productions of documents from relevant non-parties. *Id*. Plaintiffs submitted reports from, and defended the deposition of, a highly qualified expert, J.T Atkins, who was retained to provide an expert opinion on termination fees, valuation and damages. ¶37. Plaintiffs also deposed Defendants' two experts who submitted reports challenging the opinions of Plaintiffs' experts. *Id.* When the parties have "had adequate time to conduct sufficient discovery to fairly evaluate the liability and financial aspects of the case, this factor favors settlement approval." *Hunt v. Constantine Com. Constr., Inc.*, 2023 WL 5003137, at *3 (D. Md. Aug. 4, 2023)) (quoting *Lomascolo*, 2009 WL 3094955 at *11).

As noted above, at the time of Settlement, the Parties had already litigated Defendants' motions to dismiss and Plaintiffs' motion for class certification in addition to having briefed cross-motions for summary judgment. Motion practice, combined with discovery and lengthy settlement negotiations, weighs in favor of final approval. *See Graham v. Famous Dave's of Am., Inc.*, 2022 WL 17584274, at *8 (D. Md. Dec. 12, 2022) (finding fairness factors weigh towards final approval where parties had engaged in "some motions practice," "lengthy settlement negotiations," and "some preliminary discovery"). The substantial discovery and motion practice in this case provided each side with further insight to evaluate the merits and, as discussed below, laid the groundwork for the arm's-length negotiations through an independent mediator that ultimately resulted in the Settlement.

Moreover, the settlement negotiations were conducted at arms-length by experienced class-

action litigators with the assistance of an experienced Magistrate Judge as mediator.  On June 6, 2024, Co- Lead Counsel and Defendants' Counsel participated in a mediation session before Judge Abelson.  In advance of the mediation, the Parties provided detailed mediation statements and exhibits to the Mediator, which addressed the relative merits of their claims on issues of both liability and damages.  Although the first session was unsuccessful, as both sides zealously advocated their positions, after further discussions with Judge Abelson and his recommendation of a "mediator's proposal" to settle for $2,175,000, the Parties agreed to resolve the case. Both Judge Abelson's personal and extensive involvement in the mediation process and the fact that the proposed Settlement resulted from Judge Abelson's mediator's proposal speak powerfully in support of both the procedural and substantive fairness of the proposed Settlement.  ¶¶ 45-50.

Finally, the fourth fairness factor is "the experience of counsel in the area of class action litigation." *Boger*, 2023 WL 1415625, at *8 (citing *Jiffy Lube,* 927 F.2d at 159).  Here, Co-Lead Counsel are among the most highly qualified securities class actions firms and have a wealth of experience litigating securities class actions and other complex litigation across the Country. ¶¶ 101-104. Courts recognize that the opinion of experienced and informed counsel favoring a settlement should be afforded consideration in determining whether a class settlement is fair and adequate. *See Smith v. David's Loft Clinical Programs, Inc.*, 2022 WL 16553228, at *5 (D. Md. Oct. 31, 2022).

Additionally, Plaintiffs supervised, monitored, and were actively involved throughout the prosecution and settlement of the Action.[8]  For example, Plaintiffs regularly communicated with Co-Lead Counsel regarding the progress of the case; reviewed court filings and other material documents throughout the case; participated in discussions regarding litigation strategy and

---

[8] Prior to the filing of the motion seeking Class Certification, the Trusts provided the initial oversight and supervision of the case which was later undertaken by the Class Representatives once the Class was certified.  Ex. 1 at ¶37.

significant developments in the Action; worked with counsel to respond to discovery requests, including producing documents and providing deposition testimony; and were involved in the mediation process that ultimately led to the proposed Settlement, including the decision to agree to the Settlement. *See* Exs. 1-G, 1-H.

Accordingly, the proposed Settlement satisfies Rule 23(e)(2)(B).

### 3. The Relief Provided by the Settlement Is Adequate

The proposed Settlement readily satisfies Rule 23(e)(2)(C) (and the *Jiffy Lube* adequacy factors).[9]  Under Rule 23(e)(2)(C), the Court must consider whether "the relief provided for the class is adequate, taking into account . . . the costs, risks, and delay of trial and appeal," as well as other relevant factors. Fed. R. Civ. P. 23(e)(2)(C).

To determine whether a proposed settlement is fair, reasonable, and adequate, courts balance the continuing risks of litigation against the benefits afforded to class members through settlement. *See, e.g.*, *Feinberg v. T. Rowe Price Grp., Inc.*, 610 F. Supp. 3d 758, 768 (D. Md. 2022) (the first two *Jiffy Lube* factors are "the most important factors in this analysis," comparing "the relative strength of Plaintiffs' case on the merits and the existence of any difficulties of proof or strong defenses the Plaintiffs are likely to encounter if the case goes to trial") (quoting *Sharp Farms v. Speaks*, 917 F.3d 276, 299 (4th Cir. 2019)).  Because the $2,175,000 Settlement represents a very good recovery for the Class, particularly in light of the risks of litigation and potential outcomes at trial, Plaintiffs respectfully submit that the Settlement provides adequate relief to the Class.

As discussed below and in the Joint Declaration, if this Action were to continue, Plaintiffs

---

[9] This factor under Rule 23(e)(2)(C) encompasses four of the five factors of the traditional *Jiffy Lube* adequacy analysis: "(1) The relative strength of the plaintiffs' case on the merits, (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial, (3) the anticipated duration and expense of additional litigation, [and] (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment." *Jiffy Lube*, 927 F.2d at 159.

would have to clear substantial hurdles before obtaining any recovery. While Plaintiffs believe that the claims asserted against Defendants were strong and that substantial evidence to support the allegations has been adduced, they recognize that the Action presented numerous legal and factual challenges to establishing both liability and damages.

(a)    **Risks of Establishing Liability and Damages Support Approval of the Settlement**

Despite overcoming, in part, Defendants' motions to dismiss, Plaintiffs would face challenges in proving to the ultimate finder of fact that the Defendants breached their fiduciary duties in connection with approving the Termination Fee. *See* ¶53. Defendants strenuously argued at the motion to dismiss and summary judgment stages, and would continue to maintain at trial, that (among other things) Plaintiffs would be unable to prove liability and that Plaintiffs do not have sufficient facts to overcome the exculpatory provision in Bowl America's charter. Even if Plaintiffs prevailed on this issue at summary judgment (and this was a significant challenge), Defendants would certainly argue to the jury that Plaintiffs cannot prove that Defendants received "an improper benefit or profit in money, property, or services" or acted with "active and deliberate dishonesty" providing them with a defense under Maryland law. Defendants would also assert that notwithstanding the exculpatory clause, Plaintiffs cannot rebut the presumption of the business judgment rule under Maryland law because the Termination Fee was not unreasonable and more significantly, that Defendants did not act fraudulently or unconscionably in approving the Merger. ¶¶54-55. Even if Plaintiffs prevailed on this critical issue before the jury, it would certainly then become a prime issue for appeal by Defendants.

Plaintiffs also faced ongoing risks associated with the pending motions for summary judgment, Defendants' intention to revisit class certification, *in limine* motions seeking to limit damages or exclude evidence, trial, and likely appeals, which would extend the litigation for years and might lead to a smaller recovery or no recovery at all. The Court's modification or reversal of

11

its class certification decision or granting of summary judgment in Defendants' favor potentially could have resulted in little or no recovery for the Class. *Id.* at ¶60.

As to risks associated with damages, Plaintiffs' damages expert estimated that class-wide maximum reasonably recoverable damages were approximately $7.2 million. ¶63. This estimated amount assumed Plaintiffs' complete success in establishing Defendants' liability, and further assumed that the trier of fact would reject all of Defendants' damages arguments as Defendants' expert opined that the maximum damage number was $2.4 million.[10] ¶58 If Defendants' arguments were credited by the Court or the jury at trial, the class's damages could have been significantly reduced or eliminated altogether.

Even surviving a summary judgment challenge in full and prevailing at trial would not guarantee a recovery larger than the $2,175,000 settlement. *Id.* A jury's reaction to expert testimony on damages is highly unpredictable, and Plaintiffs recognize that, in a such a battle, there is the possibility that a jury could be swayed by Defendants' expert(s) and find there were no damages, or that they were only a fraction of the amount claimed by Plaintiffs. *See, e.g.*, *In re MicroStrategy, Inc. Sec. Litig.*, 148 F. Supp. 2d 654, 667 (E.D. Va. 2001) ("[T]he damages issue would have become a battle of experts at trial, with no guarantee of the outcome in the eyes of the jury."). Furthermore, post-trial motions or appeals could reverse a judgment for Plaintiffs or reduce a favorable damages award. *See Miller v. Asensio & Co., Inc.*, 364 F.3d 223, 235 (4th Cir. 2004) (affirming judgment on jury verdict determining liability but awarding zero damages to plaintiffs); *Taylor v. First Union Corp. of South Carolina*, 857 F.2d 240, 243, 247 (4th Cir. 1988) (after two trials, reversing jury verdict on material misrepresentation grounds); *Stuckey v. Geupel*, 854 F.2d 1317, 1317 (4th Cir. 1988) (upholding judgment notwithstanding the verdict setting aside $2.1 million award to plaintiffs on loss causation grounds); *Robbins v. Koger Props., Inc.*, 116  F.3d

---

[10] Defendants have consistently maintained that Plaintiffs and the Class suffered no compensable damages.

1441, 1446, 1449 (11th Cir. 1997) (jury verdict of $81 million for plaintiffs against accounting firm reversed on appeal on loss causation grounds and judgment entered for defendant). Accordingly, the proposed Settlement satisfies Rule 23(e)(2)(C)(i).

**(b)    The Settlement Is Reasonable In Light of the Potential Recovery**

In addition to the risks of litigation discussed above, the Settlement is also fair and reasonable in light of the potential recovery of available damages. Plaintiffs' consulting damages expert estimated that class-wide maximum reasonably recoverable damages were approximately $7.2 million. This estimated amount assumed Plaintiffs' complete success in establishing Defendants' liability, and further that the trier of fact would reject all of Defendants' damages arguments. The $2,175,000 Settlement represents approximately 30% of Plaintiffs' maximum estimated damages. ¶¶ 58, 64, 66.

As such, the Settlement falls within the range that courts commonly approve. *See, e.g.*, *Boger v. Citrix Sys.*, Inc., 2023 WL 3763974, at *11, *11 n. 7 (D. Md. June 1, 2023) (approving settlement payments of 8.8% of maximum potential damages because "it is well settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery") (quoting *National Rural Tele. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004)); *Orman v. Am. Online, Inc.*, 1998 WL 1969646 (E.D. Va. Dec. 14, 1998) (approving $35 million settlement amounting to approximately 5% of the maximum potential damages); *Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc*., 855 F. Supp. 825, 833 (E.D.N.C. 1994) (approving a 5% recovery while noting cases in other circuits granting 3% recovery).

According to Cornerstone Research, which conducts annual and semi-annual reviews of securities class action settlements, for cases with total estimated damages (based on Cornerstone's analysis of settlements of less than $25 million) from 2014 to 2022, plaintiffs recovered 18.8% of total estimated damages and 15.2% of damages in 2023. *See* Laarni T. Bulan and Laura E. Simmons, *Securities Class Action Settlements – 2023 Review and Analysis* (Cornerstone Research

13

2024), Ex. 1-B, at 6. Having achieved a recovery of approximately 30% of the maximum estimated damages, Plaintiffs greatly exceeded the average recovery for smaller settlements.[11] *Id.*

### (c)    Costs and Delay of Continued Litigation Support Approval of the Settlement

In addition to the substantial risks and uncertainty inherent in continued litigation, Plaintiffs and the Class face the certainty that further litigation would be expensive, complex, and time consuming. The fact that the Settlement eliminates the substantial delay and expense of summary judgment motions, *in limine* motions, trial, and likely appeals, a process that could possibly extend for years and might lead to a smaller recovery, or no recovery at all, strongly weighs in favor of approval. ¶ 6 2 ; *see, e.g.*, *Robinson v. Nationstar Mortg. LLC*, 2020 WL13119703, at *3 (D. Md. Aug. 19, 2020) ("Here, as in most class actions, there is risk to both parties in continuing towards trial.").

Accordingly, for the foregoing reasons, the proposed Settlement satisfies Rule 23(e)(2)(C)(i).

### (d)    The Effective Process for Distributing Relief to the Settlement Class

Rule 23(e)(2)(C) also instructs courts to consider whether the relief provided for the class is adequate in light of "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." The Settlement, like most securities class action settlements, will be effectuated with the assistance of an established and experienced claims administrator. Here, the Court-appointed Settlement Administrator, Epiq Class Action and Claims Solutions, Inc., ("Epiq"), is employing a well-tested protocol for distributing the Settlement proceeds. Based on the information held by DTC and Bowl America, the Settlement Administrator will determine each claimant's eligibility to participate by, among other things, determining which

---

[11] While no federal securities law claims survived in this case, the data on settlements for federal securities law class actions is nonetheless informative given the securities-based nature of the remaining claims.

non-excluded Bowl America stockholders held shares at the time of the Merger and calculating their respective share of the net Settlement Fund based on the Court-approved Plan of Allocation, and ultimately determining each eligible claimant's *pro rata* portion of the Net Settlement Fund. *See* Stipulation (ECF No. 154-3 at ¶¶ 8(b), 37).

After the Settlement reaches its Effective Date (*id*. at ¶¶20-22) and the identification of eligible Class Members is determined, the Settlement Administrator will issue payments from the Net Settlement Fund.  If there are unclaimed funds after the initial distribution, and it would be feasible and economical to conduct a further distribution, the Settlement Administrator will conduct a further distribution of remaining funds (less the estimated expenses for the additional distribution, Taxes, and unpaid Notice and Administration Expenses). Additional distributions will proceed in the same manner until it is no longer economical to conduct further distributions.  Any *de minimis* balance that still remains in the Net Settlement Fund will be disposed of pursuant to the Court's instructions.  *Id*.  Accordingly, the proposed Settlement satisfies Rule 23(e)(2)(C)(ii).[12]

### 4.    Class Members Are Treated Equitably Relative to One Another

The Settlement treats members of the Class equitably relative to one another. As set forth above, Class Members will receive a distribution from the Net Settlement Fund pursuant to the Plan of Allocation approved by the Court.  Plaintiffs will receive the same *pro rata* recovery per share under the Plan of Allocation as all Class Members. ¶¶ 80-86.

### 5.    Reaction of the Class to Date Supports Approval of the Settlement

The reaction of the Class to the proposed Settlement, to date, also strongly supports final approval.  The reaction of class members to a proposed settlement "as expressed directly or by failure to object" is "a proper consideration for the trial court. *Flinn v. FMC Corp.,* 528 F.2d 1169,

---

[12] Co-Lead Counsels' request for an award of attorneys' fees, litigation expenses, and awards to Plaintiffs are addressed in the accompanying Fee and Expense Motion and supporting Memorandum.

1173 (4th Cir. 1975). A low number of objections or opt-outs in comparison to the size of the settlement class evidences the adequacy and fairness of the proposed settlement. *See, e.g., In re The Mills Corp. Sec. Litig.,* 265 F.R.D. 246, at 257-58 (E.D. Va. 2009) (noting that the lack of any objections to the settlement and the small number of opt-outs strongly compel a finding of adequacy). *See also, Erny on behalf of India Globalization Cap., Inc. v. MuKunda*, 2020 WL 3639978, at *3 (D. Md. July 6, 2020) ("Finally, and perhaps most importantly, this settlement remains unopposed."). Pursuant to the Preliminary Approval Order, the Court-appointed Settlement Administrator, Epiq, mailed copies of the Postcard Notice to record holders identified in the Company's transfer records and potential Class Members and their nominees. Ex. 1-A at ¶¶3-9. As of November 20, 2024, Epiq has mailed or emailed 1,711 copies of the Postcard Notice to potential Class Members. Ex. 1 at ¶124. In addition, the Summary Notice was published in PR Newswire on September 23, 2024, and posted on the internet using the Settlement Website. *Id*. at ¶¶69, 73, 125.

While the deadline set by the Court for Class Members to object or request exclusion (November 28, 2024) has not yet passed, to date, no objections have been received[13], and no requests for exclusion have been received. ¶¶ *Id.* at ¶¶ 4, 126. Plaintiffs will file reply papers no later than December 5, 2024, addressing any objections and requests for exclusion.

## II.    THE PROPOSED PLAN OF ALLOCATION IS FAIR AND REASONABLE

In addition to seeking final approval of the Settlement, Plaintiffs seek approval of the proposed Plan of Allocation for the Settlement proceeds. Approval of a plan of allocation for settlement proceeds is governed by the same standards of fairness and reasonableness applicable to the settlement as a whole. *See, e.g., Feinberg*, 610 F. Supp. 3d at 769 ("[T]he plan of allocation

---

[13] One potential objector Kristen Beery Hahn called the Court to register her objection. *See* Ex. 1-D. There is no evidence that Ms. Hahn is a Class Member and, in any event, no objection has been filed by her to date. Co-Lead Counsel, upon being advised of Ms. Hahn's inquiry, provided her with the long form Notice detailing the procedures for objections.

must also meet the standards of fairness, reasonableness, and adequacy") (quoting *Boyd v. Coventry Health Care Inc.*, 299 F.R.D. 451, 461 (D. Md. 2014)). "The proposed allocation need not meet standards of scientific precision, and given that qualified counsel endorses the proposed allocation, the allocation need only have a reasonable and rational basis." *Id.*

The proposed Plan of Allocation for the proceeds of the Settlement is set forth in pages 9-10 of the long form Notice (Ex. I-C), which was posted on the Settlement Webpage and available from Epiq upon request. The proposed plan was developed by Co-Lead Counsel in consultation with Plaintiffs' damages expert, who calculated the number of eligible shares outstanding necessary for determining the pro rata amounts paid to each Class Member. The Plan provides for the distribution of the Net Settlement Fund to Class Members on a *pro rata* basis to holders of the eligible shares, based on the number of shares of Bowl America stock held by each class member at the time of the Merger. ¶¶ 80-86, 117.

Co-Lead Counsel believe that the Plan of Allocation provides a fair and reasonable method to equitably allocate the Net Settlement Fund among Class Members who suffered losses as result of the alleged misconduct. To date, no objections to the proposed Plan of Allocation have been received. ¶78.

17

## III.    NOTICE SATISFIED RULE 23 AND DUE PROCESS

The notice program satisfied the requirements of Rule 23, which requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The notice program also satisfied Rule 23(e)(1), which requires that notice of a settlement be "reasonable"—*i.e.*, it must "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Boger*, 2023 WL 3763974 at *12 (citing *McAdams v. Robinson*, 26 F.4th 149, 158 (4th Cir. 2022); *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). There have been no objections to the Notice.

Both the substance of the notices and the method of their dissemination to potential members of the Class satisfied these standards. In accordance with the Revised Preliminary Approval Order, Epiq began mailing copies of the Postcard Notice to potential Class Members on September 10, 2024. *See* Ex. 1-A at ¶¶3-9. As of November 20, 2024, Epiq has mailed or emailed 1,711 copies of the Postcard Notice to potential Class Members and nominees. *See Id.* at ¶7. Epiq also established the Settlement Webpage and posted the long form Notice, and other relevant documents including the Stipulation of Settlement and Revised Preliminary Approval Order. In addition, Epiq caused the Summary Notice to be published over the *PR Newswire* and transmitted over the internet. *See id.* ¶10.[14]

As noted in the Preliminary Approval Motion, the expense portion of Plaintiff's Counsel's request would not exceed $360,000. The long form Notice posted on the Settlement Website stated the fee request would be 28% and provided an estimated net per share recovery of ($0.55) that included a calculation of expenses up to $360,000. However, in preparation of the papers for final approval, it came to Co-Lead counsel's attention that the final version of the long form Notice as

---

[14] Notice required by the Class Action Fairness Act was also completed, and proof of that notice was filed with the Court. ECF No. 157.

published on the website, inadvertently omitted an explicit reference to the maximum expense number of $360,000 that had been originally included in the proposed notice attached to Plaintiffs' Motion for Preliminary Approval.  Compare Ex. 1-C at ¶58 and ECF No. 154-3 p.66 at ¶56. Plaintiffs' Counsel notes that to date, no class member has inquired further about the expenses or objected to the Notice. ¶ 114.

This combination of economical individual mail to all Class Members who could be identified with reasonable effort, supplemented by notice in an appropriate, widely-circulated publication, and transmitted over a newswire, was "the best notice . . . practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B).

## CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request that the Court approve the proposed Settlement as fair, reasonable, and adequate and approve the Plan of Allocation as fair, reasonable, and adequate.  Proposed orders will be submitted with Plaintiffs' reply papers, after the deadlines for objections and seeking exclusion have passed.

DATED: November 21, 2024                    Respectfully submitted,

/s/  Daniel S. Sommers
COHEN MILSTEIN SELLERS
& TOLL PLLC
Daniel S. Sommers (Bar No. 15822)
1100 New York Avenue NW, Fifth Floor
Washington, DC 20005
Tel: (202) 408-4600
Fax: (202) 408-4699
dsommers@cohenmilstein.com


Richard A. Speirs (admitted *pro hac vice*)
88 Pine Street, 14th Floor
New York, NY 10005
Tel: (212) 838-7797
Fax: (212) 838-7745
rspeirs@cohenmilstein.com

*Co-Lead Counsel for Plaintiffs*

Kohrman Jackson & Krantz LLP
Brett S. Krantz (admitted *pro hac vice*)
4 One Cleveland Center, 29th Floor
1375 East Ninth Street
Cleveland, OH 44114
Tel: (216) 696-8700
Fax: (216) 621-6536
bk@kjk.com

*Co-Lead Counsel for Plaintiffs*

### CERTIFICATE OF SERVICE

I hereby certify that on November 21, 2024, I caused a copy of the foregoing document to be filed with the Clerk of the Court via CM/ECF, which will send a notice of electronic filing to all registered users.

By: */s/ Daniel S. Sommers*
Daniel S. Sommers